1   **JEFF LANDRY**
   **ATTORNEY GENERAL OF LOUISIANA**
2   ELIZABETH B. MURRILL (*pro hac vice forthcoming*)
   *Solicitor General*
3   JOSEPH S. ST. JOHN (*pro hac vice forthcoming*)
   *Deputy Solicitor General*
4   LOUISIANA DEPARTMENT OF JUSTICE
   1885 N. Third Street
5   Baton Rouge, LA 70804
   Tel: (225) 326-6766
6   emurrill@ag.louisiana.gov

7   *Counsel for the State of Louisiana*

8   SEE SIGNATURE PAGE FOR
   ADDITIONAL PARTIES AND COUNSEL

9

             **UNITED STATES DISTRICT COURT**

10

           **NORTHERN DISTRICT OF CALIFORNIA**

11

12   STATE OF CALIFORNIA, by and through
   ATTORNEY GENERAL XAVIER
13   BECERRA and the STATE WATER
   RESOURCES CONTROL BOARD,
14   STATE OF WASHINGTON, STATE OF
   NEW YORK, STATE OF COLORADO,
15   STATE OF CONNECTICUT, STATE OF
   ILLINOIS, STATE OF MAINE, STATE
16   OF MARYLAND, COMMONWEALTH
   OF MASSACHUSETTS, STATE OF
17   MICHIGCAN, STATE OF MINNESTOA,
   STATE OF NEVADA, STATE OF NEW
18   JERSEY, STATE OF NEW MEXICO,
   STATE OF NORTH CAROLINA, STATE
19   OF OREGON, STATE OF RHODE
   ISLAND, STATE OF VERMONT,
20   COMMONWEALTH OF VIRGINIA,
   STATE OF WISCONSIN, and the
21   DISTRICT OF COLUMBIA,

22             Plaintiffs,

23       v.

24   ANDREW R. WHEELER, in his official
   capacity as ADMINISTRATOR OF THE
25   UNITED STATES ENVIRONMENTAL
   PROTECTION AGENCY, and the
26   UNITED STATES ENVIRONMENTAL
   PROTECTION AGENCY,
27
          Defendants.
28

No. 4:20-cv-4869-KAW

**NOTICEOF MOTION AND MOTION TO INTERVENE BY THE STATES OF LOUISIANA, MONTANA, ARKANSAS, MISSISSIPPI, MISSOURI, TEXAS, WEST VIRGINIA, AND WYOMING**

Hr'g Date: Oct. 15, 2020
Hr'g Time: 1:30 p.m.
Judge: Hon. Kandis Westmore
Action Filed: July 21, 2020
Dep't: Oakland Courthouse

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Pursuant to Local Rule 7-1(b), the States of Louisiana, Montana, Arkansas, Mississippi, Missouri, Texas, West Virginia, and Wyoming (collectively, "State Intervenors") respectfully move to intervene as Defendants in the above-captioned litigation without oral argument. Alternatively, the State Intervenors notice that on October 15, 2020, at 1:30 p.m., before the presiding district judge or the Hon. Kandis Westmore, 1301 Clay Street, Oakland, California, or as soon thereafter as the Court may order, the State Intervenors will and do hereby move for the same relief.

This motion is brought pursuant to Federal Rule of Civil Procedure 24. As more fully set forth in the accompanying memorandum, the grounds for the motion are: (a) the motion is timely; (b) the State Intervenors have significant protectable interests, both as sovereigns and as advocates for the challenged rule; (c) the disposition of this action could impede the State Intervenors' ability to protect those interests; (d) the current parties do not adequately represent the interests of the State Intervenors; and (e) the State Intervenors' position in support of the revised regulations plainly involves common questions of law and fact with this action, and their direct opposition to Plaintiffs' claims satisfies the "common question" requirement for permissive intervention. This motion is based on this motion and the supporting memorandum below; the accompanying Declaration of Joseph S. St. John; and any further papers filed in support of this motion, the argument of counsel, and all pleadings and records on file in this matter.

**PLEASE TAKE FURTHER NOTICE** that counsel for Louisiana contacted counsel for the parties on August 20, 2020. Both Plaintiffs and the United States take no position on this motion.

**PLEASE TAKE FURTHER NOTICE** that State Intervenors' proposed answer is attached.

# MEMORANDUM IN SUPPORT

## BACKGROUND

### THE CLEAN WATER ACT

Since 1970, "[a]ny applicant for a Federal license or permit to conduct any activity . . . which may result in any discharge into the navigable waters . . . shall provide the licensing or permitting agency a certification from the State in which the discharge originates or will originate . . . ." Water Quality Improvement Act of 1970, Pub. L. 91-224, 84 Stat. 91, 108 (Apr. 3, 1970). In 1972, Congress enacted a "total restructuring" and "complete rewriting" of the nation's water pollution control laws, including the provision requiring certification. *City of Milwaukee v. Illinois*, 451 U.S. 304, 317 (1981) (quoting legislative history); *see also* Federal Water Pollution Control Act Amendments of 1972, Pub. L. 92-500, 86 Stat. 816, 877 (Oct. 16, 1972) (codified at 33 U.S.C. § 1341). Of particular relevance here, Congress narrowed the requirement from a certification "that such *activity* will be conducted in a manner which will not violate applicable *water quality standards*," 84. Stat. at 108 (emphasis added), to a certification only "that any such *discharge* will comply with *the applicable provisions of sections 301, 302, 306, and 307 of this Act*," 86 Stat. at 877 (emphasis added).

### CERTAIN STATES ABUSE THEIR 401 CERTIFICATION AUTHORITY

Despite the statutory change, the Environmental Protection Agency ("EPA") failed to revise the regulations governing the required certification, which is known as a 401 Certification. As a result, EPA's regulations were incongruent with the new statutory language. *Cf.* NPDES; Revision of Regulations, 44 Fed. Reg. 32,854, 32,856 (June 7, 1979) (indicating need for updated certification rules). Certain states began using the incongruity and ambiguities in EPA's regulations to abuse their certification authority for the purpose of delaying or denying certifications on non-water quality grounds. In February 2019, Louisiana and other State Intervenors wrote to EPA Administrator Wheeler about that abuse and requested that EPA "clarify[y] . . . the process by which federal and state regulatory authorities are expected to implement [Section 401]." Exh. 1. That weighty request was bolstered when, on April 10, 2019, the President issued an Executive Order noting that "[o]utdated Federal guidance and regulations regarding section 401 of the Clean Water Act . . . are causing confusion and uncertainty and are hindering the development of energy infrastructure." EO

3

13868, 84 Fed. Reg. 15,494 (Apr. 15, 2019). The President directed Administrator Wheeler to review

EPA's Section 401 regulations, "determine whether any provisions thereof should be clarified," and

"publish for notice and comment proposed rules revising such regulations, as appropriate and

consistent with law." *Id.* Louisiana and other Intervenor States then submitted additional comments

in response to EPA's request for Pre-Proposal Stakeholder Engagement. Exhs. 2, 7.

Louisiana identified the State of Washington's denial of certification for a proposed coal

facility, the Millennium Bulk Terminal, as a paradigmatic example of abuse. Exh. 1.  The Governor of

Wyoming later explained:

> Wyoming has been adversely impacted by the misapplication of other states' CWA Section 401 certifications. Our interest in a streamlined 401 certification process is founded by the fact that a large portion of Wyoming's economy depends on our ability to export our energy products to the markets that demand them, particularly markets located overseas in Asia. In the case of the Millennium Bulk Terminal, Washington State blocked the terminal's construction by inappropriately denying the State's Section 401 certification on account of non-water quality related impacts -- an illegal maneuver based on alleged effects that are outside of the scope of Section 401.

Exh. 4. The permit applicant for the proposed Millennium Bulk Terminal elaborated:

> Millennium sought a Clean Water Act, Section 401 water quality certification from the Washington Department of Ecology ("Washington Ecology") for nearly six years. As part of the 401 certification process, Millennium has spent over $15 million to obtain an environmental impact statement ("EIS"), which originally began as a dual EIS under the National Environmental Policy Act ("NEPA") and the Washington State Environmental Policy Act ("SEPA"), with the US Army Corps of Engineers as the lead agency under NEPA and with the Washington Ecology and Cowlitz County as co-lead agencies under SEPA. In September 2013, the state and federal agencies agreed to separate and prepare both a federal EIS and a state EIS.

> The state EIS concluded with respect to the Project that "**There would be no unavoidable and significant adverse environmental impacts on water quality.**"

> \* \* \* \* \*

> Washington Governor Jay Inslee, and others in his administration, including Washington Ecology Director Bellon, have expressed their belief that no fossil fuel infrastructure projects should ever be built in the State of Washington. Denying Millennium's 401 water quality certification was the way that they could impose their own personal policy preferences to ensure that no permits would be issued for the Project and they could stop sister states from exporting their products into foreign commerce.

Exh. 8.

Other comments and judicial opinions make clear the Millennium Bulk Terminal denial was

not an isolated abuse. *See, e.g.,* Exh. 9. Indeed, the State of Maryland went so far as to seek a multi-

4

billion dollar "payment-in lieu" of imposing unachievable conditions unrelated to the discharge for which certification was sought – a demand that would ordinarily be considered extortion and which raises constitutional concerns. Ex. 10; *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825 (1987). The Federal Energy Regulatory Commission bluntly summarized the status quo: "[I]t is now commonplace for states to use Section 401 to hold federal licensing hostage." *Hoopa Valley Tribe v. FERC*, 913 F.3d 1099, 1104 (D.C. Cir. 2019).

### EPA ADOPTS A RULE TO ELIMINATE AMBIGUITY AND ABUSE

Citing the April 2019 Executive Order and Pre-Proposal Stakeholder Engagement, EPA published a proposed rule, Updating Regulations on Water Quality Certification, 84 Fed. Reg. 44,080 (Aug. 22, 2019), to, *inter alia*, limit the scope of 401 certification to water quality impacts from the discharge associated with the licensed or permitted project; interpret "receipt" and "certification request" as used in the CWA; reaffirm that certifying authorities are required by the CWA to act on a request for certification within a reasonable period of time, which shall not exceed one year; and specify the contents and effect of a certification or denial. Despite the short text of the proposed rule itself—less than four *Federal Register* pages—EPA provided a lengthy statutory and legal analysis.

Louisiana, joined by other states, provided extensive comments in support of the proposed rule. Exhs. 1-3. The Governor of Wyoming even testified before the Senate Committee on the Environment and Public Works in support of EPA's rule and parallel Congressional action. Thereafter, EPA published the final rule, Clean Water Act Section 401 Certification Rule, 85 Fed. Reg. 42210 (July 13, 2020). Plaintiffs filed their 32-page complaint a mere eight days later. Louisiana, Arkansas, Mississippi, Missouri, Montana, Texas, West Virginia, and Wyoming (collectively, "State Intervenors") now timely move to intervene in defense of the final rule.

### LEGAL STANDARDS

With respect to intervention as of right, "[o]n timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). "An applicant

1  seeking to intervene as of right under Rule 24 must demonstrate that four requirements are met: (1)

2  the intervention application is timely; (2) the applicant has a significant protectable interest relating to

3  the property or transaction that is the subject of the action; (3) the disposition of the action may, as a

4  practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing

5  parties may not adequately represent the applicant's interest." *Citizens for Balanced Use v. Montana*

6  *Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). "[T]he requirements are broadly interpreted in

7  favor of intervention." *Id.*

8        With respect to permissive intervention, "[o]n timely motion, the court may permit anyone to

9  intervene who. . . has a claim or defense that shares with the main action a common question of law

10  or fact." Fed. R. Civ. P. 24(b)(1). Additionally, "the court may permit a federal or state governmental

11  officer or agency to intervene if a party's claim or defense is based on . . . a statute or executive order

12  administered by the officer or agency." *Id.* at 24(b)(2). Thus, "permissive intervention requires (1) an

13  independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact

14  between the movant's claim or defense and the main action." *Freedom from Religion Found. v. Geithner*,

15  644 F.3d 836, 843 (9th Cir. 2011).

16                      **INTERESTS AND GROUNDS FOR INTERVENTION**

17  **I.      The Court should grant intervention as of right.**

18          **A.      The motion is timely.**

19        Plaintiffs filed their complaint last month, and this litigation is in its earliest stages. *See Citizens*

20  *for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (finding a motion was

21  timely when filed three months after plaintiff's complaint). Defendants have not yet answered the

22  complaint or submitted any other filings, and the proposed intervention poses no prejudice to the

23  parties. Finally, the State Intervenors have not delayed the proceedings. Upon learning of the lawsuit,

24  they quickly acted to meet and confer with all parties and move for party status to protect their

25  substantial interests. This motion is therefore timely. *See United States v. Oregon*, 745 F.2d 550, 552 (9th

26  Cir. 1984) (listing considerations for timeliness).

27

28

1

2

      **B.**     **The State Intervenors have significant protectable interests, both as sovereigns and as advocates for the challenged rule.**

3

4

      The State Intervenors have clear and substantial protectable interests at stake in this action. The "property" that is the subject of this action — particularly given Plaintiffs' request for nationwide relief — includes the sovereign lands and waters within the State Intervenors' borders, the scope of the State Intervenors' power and duty to regulate use of that property, and the State Intervenors' sovereign right to develop their natural resources without interference from other states. *See Oregon*, 745 F.2d at 551, 553 (reversing denial of intervention where intervening state's natural resources "may be affected" by the litigation). Those interests are reinforced by the expansive interpretation of "waters of the United States" many of the same Plaintiffs seek in the co-pending *California v. Wheeler*, No. 3:20-cv-3005-RS (N.D. Cal.), and the unbounded construction they now seek for the "appropriate requirement of State law" portion of the certification requirement. Put directly, Plaintiffs seek to regulate interstate commerce and waters of the United States in excess of the authority delegated by Congress. In doing so, Plaintiffs seek to foist their policy choices on the State Intervenors by indirectly regulating the State Intervenors' development and export of natural resources. *Cf. Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995) (abrogated on other grounds) ("By allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court.")

      In seeking to protect their sovereign interests through regulatory channels, State Intervenors advocated extensively for the challenged rule. *E.g.*, Exhs. 1-4. Under Ninth Circuit law, such advocates for regulatory action are "entitled as a matter of right to intervene in an action challenging the legality of a measure [they have] supported." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (collecting cases); *see also Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179-80 (9th Cir. 2011) (en banc). Thus, in addition to their sovereign interests, the States Intervenor's regulatory advocacy entitles them to intervene as of right to defend the rule for which they advocated.

**C.     The disposition of this action could impede the State Intervenors' ability to protect their interests.**

The risk this action poses to the State Intervenors' interests is readily apparent. Many of the intervenors asked EPA to revise its regulations because certain States — including States that are Plaintiffs in this case — were abusing their Section 401 Certification authority to delay and obstruct projects affecting other states for policy reasons unrelated to the Clean Water Act. Indeed, certain Plaintiffs are effectively blockading landlocked states from exporting their natural resources. Not surprisingly, the State Intervenors supported and continue to support EPA's promulgation of the clarified regulations to stop that abuse.

Plaintiffs seek to erase the State Intervenors' regulatory victory by way of this action. Plaintiffs allege the revised regulations are "arbitrary, capricious, and not in accordance with law" and "exceed[] EPA's rulemaking authority."  Compl. ¶¶ 7.5, 7.12, 7.19, 7.25. Plaintiffs then ask this Court to declare the regulations unlawful, set them aside, and vacate them. Compl. at p.27. Of course, if Plaintiffs obtain that relief, the consequences will extend to the State Intervenors, too, even though the State Intervenors support the revised regulations. Aside from intervening in this case to defend against the challenge, there is no ready recourse for the State Intervenors to combat the relief Plaintiffs seek.

**D.     The parties do not adequately represent the interests of the State Intervenors.**

> **1.     Neither Plaintiffs nor EPA represent the interests of the State Intervenors.**

Unlike Plaintiffs, the State Intervenors believe the revised regulations are necessary to comply with the Clean Water Act. Regardless, the revisions are warranted to remedy abusive delays and obstructions imposed by certain States. To that end, the State Intervenors believe the revised regulations strike a reasonable and legally-correct balance between the States' sovereign powers and their obligation not to infringe the Commerce Clause, the sovereign rights of other states, and the Takings Clause rights of applicants for federal permits and licenses. Plaintiffs attacking the revised regulations clearly do not represent the State Intervenors' interests.

EPA does not represent the State Intervenors' interests, either. Although EPA will

presumably urge the Court to reject the Complaint, its rationale may differ substantively from the bases the State Intervenors intend to advance. The State Intervenors' interests unquestionably differ from those of EPA when it comes to proper interpretation of the Clean Water Act's cooperative federalism framework. For example, Intervenor States contemplate arguing that an essentially unbounded definition of "appropriate requirement of State law" in the Clean Water Act would render the act unconstitutional, an argument EPA is unlikely to put forward. EPA also cannot respond to the Plaintiffs' arguments in the same manner the State Intervenors can: as same-level sovereigns in our federal form of government. *See Sagebrush Rebellion*, 713 F.2d at 528 (stating that courts assessing the adequacy of representation consider whether the intervenor offers a necessary element to the proceedings that would be neglected). And if the Court holds the revised regulations unlawful, Plaintiffs will necessarily obtain a remedy that will increase the power of the federal government and some States at the expense of other States, thereby imposing irreparable harms on the State Intervenors.

"In assessing the adequacy of representation, the focus should be on the 'subject of the action,' not just the particular issues before the court at the time of the motion." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001) (citing *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)). "[T]he burden of showing inadequacy is 'minimal,' and the applicant[s] need only show that representation of its interests by existing parties 'may be' inadequate." *Id.* (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). The Intervenor States and their distinct sovereign interests easily satisfy that standard.

### 2. The conduct of EPA compellingly reinforces that it is inadequate to represent the interests of the State Intervenors.

In addition to the EPA's legal inadequacy, certain past conduct leaves doubt that it could adequately represent the State Intervenors interests as a factual matter. EPA has repeatedly sought expansive interpretations of environmental statutes vis-à-vis the States. *See e.g.*, *Rapanos v. United States*, 547 U.S. 715, 722 (2006). And EPA has in the past achieved its own policy aims through "sue and settle" tactics, often at the expense of States, which its officials have openly acknowledged. In 2017, then-EPA Administrator Scott Pruitt frankly explained:

> In the past, the U.S. Environmental Protection Agency has sought to resolve litigation through consent decrees and settlement agreements that appear to be the result of collusion with outside groups. Behind closed doors, EPA and the outside groups agreed that EPA would take an action with a certain end in mind, relinquishing some of its discretion over the Agency's priorities and duties and handing them over to special interests and the courts. When negotiating these agreements, EPA excluded intervenors, interested stakeholders, and affected states from those discussions.

Exh. 7.

As the Third Circuit has recognized, environmental cases "frequently pit private, state, and federal interests against each other." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 971 (3d Cir. 1998). The Third Circuit thus recognized a real risk of collusive litigation actions that undermine adequacy of representation in such cases. *Id.* at 974. More broadly, where, as here, an agency undertakes an action only reluctantly and after delaying for years, it cannot be trusted to adequately represent the interests of those who advocated for the action. *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 899-900 (9th Cir. 2011) (reviewing cases). That EPA reportedly has internal resistance to the policies of elected leaders – like the revised regulations at issue – makes clear that EPA cannot adequately represent the Intervenor States' interests in defending those policies. *Cf. Kleissler*, 157 F.3d at 974 (finding inadequacy: "[I]t is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts.").

## II. Alternatively, the Court should permit permissive intervention pursuant to Rule 24(b).

Even if this Court does not grant intervention as of right, the Court should permit the State Intervenors to intervene permissively pursuant Rule 24(b). Because the Court's jurisdiction is based on federal questions raised by Plaintiffs and the applicants for intervention do not assert additional claims, the requirement for an independent ground for jurisdiction does not apply. *Freedom from Religion Found.*, 644 F.3d at 844. This application is timely for the reasons argued above. And the State Intervenors' position in support of the revised regulations plainly involves common questions of law and fact with this action, and their direct opposition to Plaintiffs' claims satisfies the "common question" requirement for permissive intervention. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc.*, 630 F.3d at 1178, 1180; *see also, e.g., Missouri v. Harris*, 2014 WL 2506606, at *7 (E.D. Cal. June 3, 2014). Moreover, the State Intervenors

10

experience with having development blocked by abusive 401 Certification practices will provide a "helpful, alternative viewpoint" to those offered by Plaintiffs that have engaged in those very practices, and EPA, which long-tolerated them, thereby "contribut[ing] to full development of the underlying factual issues and to the just and equitable adjudication of the legal questions presented." *Pickup v. Brown*, 2012 WL 6024387, at *4 (E.D. Cal. Dec. 4, 2012).

## CONCLUSION

For the foregoing reasons, the State Intervenors request the Court grant their motion to intervene as a matter of right under Rule 24(a) or, alternatively for permissive intervention under Rule 24(b).

Dated: August 28, 2020

Respectfully submitted,

**BENBROOK LAW GROUP, P.C.**

/s/ Bradley A. Benbrook
_____
BRADLEY A. BENBROOK (CA 177786)
STEPHEN M. DUVERNAY (CA 250957)
BENBROOK LAW GROUP, P.C.
400 Capitol Mall, Suite 2530
Sacramento, CA 95814
Tel: (916) 447-4900
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

*Counsel for State Intervenors*

LOUISIANA ET AL'S MOTION TO INTERVENE

1

JEFF LANDRY
ATTORNEY GENERAL OF LOUISIANA

2

/s/ Joseph S. St. John

3

_____
ELIZABETH B. MURRILL (*pro hac vice* forthcoming)

4

*Solicitor General*
JOSEPH S. ST. JOHN (*pro hac vice* forthcoming)

5

*Deputy Solicitor General*
RYAN M. SEIDEMANN (*pro hac vice* forthcoming)

6

*Assistant Attorney General*
LOUISIANA DEPARTMENT OF JUSTICE

7

1885 N. Third Street
Baton Rouge, LA 70804

8

Tel: (225) 326-6766
emurrill@ag.louisiana.gov

9

stjohnj@ag.louisiana.gov
seidemannr@ag.louisiana.gov

10

*Attorneys for the State of Louisiana*

11

12

TIM FOX
ATTORNEY GENERAL OF MONTANA

13

/s/ Jon Bennion

14

_____
JON BENNION (*pro hac vice forthcoming*)

15

*Chief Deputy Attorney General*
215 N. Sanders, Third Floor

16

P.O. Box 201401
Helena, MT 59620

17

Tel: (406) 444-2026
jonbennion@mt.gov

18

*Attorney for the State of Montana*

19

20

21

22

23

24

25

26

27

28

12

1

**LESLIE RUTLEDGE**
  **ATTORNEY GENERAL OF ARKANSAS**

2

/s/ Nicholas J. Bronni

3

_____

NICHOLAS J. BRONNI (*pro hac vice forthcoming*)

4

  *Solicitor General*

VINCENT WAGNER (*pro hac vice forthcoming*)

5

  *Deputy Solicitor General*

OFFICE OF ARKANSAS ATTORNEY GENERAL

6

  LESLIE RUTLEDGE

323 Center Street, Suite 200

7

Little Rock, AK 72201

Tel: (501) 682-8090

8

nicholas.bronni@arkansasag.gov

vincent.wagner@arkansasag.gov

9

10

*Attorneys for the State of Arkansas*

11

12

**LYNN FITCH**
  **ATTORNEY GENERAL OF MISSISSIPPI**

13

/s/ Kristi H. Johnson

14

_____

KRISTI H. JOHNSON (*pro hac vice forthcoming*)

15

  *Solicitor General*

OFFICE OF MISSISSIPPI ATTORNEY

16

  GENERAL LYNN FITCH

P.O. Box 220

17

Jackson, MS 39205

Tel: (601) 359-5563

18

kristi.johnson@ago.ms.gov

19

*Attorney for the State of Mississippi*

20

21

**ERIC SCHMITT**
  **ATTORNEY GENERAL OF MISSOURI**

22

/s/ D. John Sauer

23

_____

D. John Sauer (*pro hac vice forthcoming*)

24

  *Solicitor General*

OFFICE OF THE MISSOURI

25

  ATTORNEY GENERAL

P.O. Box 899

26

Jefferson City, MO 65102-0899

Tel: (573) 751-1800

27

john.sauer@ago.mo.gov

28

*Attorney for the State of Missouri*

LOUISIANA ET AL'S MOTION TO INTERVENE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KEN PAXTON
  ATTORNEY GENERAL OF TEXAS

JEFFREY C. MATEER
  *First Assistant Attorney General*
RYAN L. BANGERT
  *Deputy First Assistant Attorney General*
DARREN L. MCCARTY
  *Deputy Attorney General for Civil Litigation*

/s/ David J. Hacker
_____

DAVID J. HACKER (CA 249272)
  *Associate Deputy Attorney General for Civil Litigation*
OFFICE OF THE TEXAS
  ATTORNEY GENERAL
P.O. Box 12548 (MC 001)
Austin, Texas 78711-2548
Tel: (512) 936-1700
david.hacker@oag.texas.gov

*Attorney for the State of Texas*

PATRICK MORRISEY
  ATTORNEY GENERAL OF WEST VIRGINIA

/s/ Lindsay S. See
_____

LINDSAY S. SEE (*pro hac vice forthcoming*)
  *Solicitor General*
State Capitol Building 1, Rm. 26-E
Charleston, WV 25305
Tel: (304) 558-2021
lindsay.s.see@wvago.gov

*Attorney for the State of West Virginia*

LOUISIANA ET AL'S MOTION TO INTERVENE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOR THE STATE OF WYOMING

/s/ James C. Kaste

_____
JAMES C. KASTE (*pro hac vice forthcoming*)
  *Deputy Attorney General*
WYOMING ATTORNEY GENERAL'S OFFICE
2320 Capitol Avenue
Cheyenne, Wyoming 82002
Tel: (307) 777-6946
james.kaste@wyo.gov

*Attorney for the State of Wyoming*

LOUISIANA ET AL'S MOTION TO INTERVENE