1   **JEFF LANDRY**
    **ATTORNEY GENERAL OF LOUISIANA**
2   ELIZABETH B. MURRILL (*pro hac vice forthcoming*)
      *Solicitor General*
3   JOSEPH S. ST. JOHN (*pro hac vice forthcoming*)
      *Deputy Solicitor General*
4   LOUISIANA DEPARTMENT OF JUSTICE
    1885 N. Third Street
5   Baton Rouge, LA 70804
    Tel: (225) 326-6766
6   emurrill@ag.louisiana.gov
    stjohnj@ag.louisiana.gov
7
    *Counsel for the State of Louisiana*
8
    SEE SIGNATURE PAGE FOR
9   ADDITIONAL PARTIES AND COUNSEL

10              **UNITED STATES DISTRICT COURT**

11           **NORTHERN DISTRICT OF CALIFORNIA**

12  STATE OF CALIFORNIA, by and through        No.  4:20-cv-4869
    ATTORNEY GENERAL XAVIER
13  BECERRA and the STATE WATER
    RESOURCES CONTROL BOARD,
14  STATE OF WASHINGTON, STATE OF              **ANSWER OF STATE INTERVENORS**
    NEW YORK, STATE OF COLORADO,              **LOUISIANA, MONTANA, ARKANSAS,**
15  STATE OF CONNECTICUT, STATE OF            **MISSISSIPPI, MISSOURI, TEXAS, WEST**
    ILLINOIS, STATE OF MAINE, STATE           **VIRGINIA, AND WYOMING**
16  OF MARYLAND, COMMONWEALTH
    OF MASSACHUSETTS, STATE OF
17  MICHIGCAN, STATE OF MINNESTOA,
    STATE OF NEVADA, STATE OF NEW
18  JERSEY, STATE OF NEW MEXICO,
    STATE OF NORTH CAROLINA, STATE
19  OF OREGON, STATE OF RHODE
    ISLAND, STATE OF VERMONT,
20  COMMONWEALTH OF VIRGINIA,
    STATE OF WISCONSIN, and the
21  DISTRICT OF COLUMBIA,

22                     Plaintiffs,

23          v.

24  ANDREW R. WHEELER, in his official
    capacity as ADMINISTRATOR OF THE
25  UNITED STATES ENVIRONMENTAL
    PROTECTION AGENCY, and the
26  UNITED STATES ENVIRONMENTAL
    PROTECTION AGENCY,
27
                       Defendants.
28

                            1

**STATE INTERVENORS' ANSWER TO COMPLAINT**

Intervenors Louisiana, Montana, Arkansas, Mississippi, Missouri, Texas, West Virginia, and Wyoming ("State Intervenors"), make this Answer to Plaintiffs' Complaint in the above-captioned case. Pursuant to Federal Rule of Civil Procedure 8(b), State Intervenors deny each and every allegation contained in Plaintiffs' Complaint except for those expressly admitted herein. For the avoidance of doubt, (a) State Intervenors deny all summations, characterizations, etc. of legal authorities on the basis that such allegations state a legal conclusion as to which no response is required and that legal authorities speak for themselves, and (b) deny all headings.

**INTRODUCTION**

1.1     Admitted that this lawsuit challenges a final rule issued by the Defendants, entitled Clean Water Act Section 401 Certification Rule, 85 Fed. Reg. 42,210 (July 13, 2020) ("Rule"). Specifically denied that the Rule published at 85 Fed. Reg. 42,210 was entitled "Updating Regulations on Water Quality Certification." Otherwise denied.

1.2     Admitted that 33 U.S.C. § 1251(a) provides, in part: "The objective of this chapter is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." Admitted that 33 U.S.C. § 1251(b) states, in part: "It is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and enhancement) of land and water resources, and to consult with the Administrator in the exercise of his authority under this chapter." Otherwise denied.

1.3     Admitted that 33 U.S.C. § 1370 provides:

> Except as expressly provided in this chapter, nothing in this chapter shall (1) preclude or deny the right of any State or political subdivision thereof or interstate agency to adopt or enforce (A) any standard or limitation respecting discharges of pollutants, or (B) any requirement respecting control or abatement of pollution; except that if an effluent limitation, or other limitation, effluent standard, prohibition, pretreatment standard, or standard of performance is in effect under this chapter, such State or political subdivision or interstate agency may not adopt or enforce any effluent limitation, or other limitation, effluent standard, prohibition, pretreatment standard, or standard of performance which is less stringent than the effluent limitation, or other limitation, effluent standard, prohibition, pretreatment standard, or standard of performance under this chapter; or (2) be construed as impairing or in any manner affecting any right or jurisdiction of the States with respect to the waters (including boundary waters) of such States.

The Intervenor States lack knowledge or information sufficient to form a belief about the truth of whether "State standards, including those of the Plaintiff States . . . frequently are more protective;" that allegation is therefore denied. The remainder of this paragraph states legal conclusions as to which no response is required. To the extent a response is required, it is denied.

1.4    Admitted that 33 U.S.C. § 1341(a)(1) provides, in part: "No license or permit shall be granted if certification has been denied by the State, interstate agency, or the Administrator, as the case may be."

1.5 Admitted that 33 U.S.C. § 1341(d) provides:
> Any certification provided under this section shall set forth any effluent limitations and other limitations, and monitoring requirements necessary to assure that any applicant for a Federal license or permit will comply with any applicable effluent limitations and other limitations, under section 1311 or 1312 of this title, standard of performance under section 1316 of this title, or prohibition, effluent standard, or pretreatment standard under section 1317 of this title, and with any other appropriate requirement of State law set forth in such certification, and shall become a condition on any Federal license or permit subject to the provisions of this section.

The remainder of this paragraph states legal conclusions as to which no response is required. To the extent a response is required, it is denied.

1.6    The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this paragraph; it is therefore denied.

1.7    Admitted that on April 10, 2019, President Trump issued Executive Order 13,868. The text of the executive order speaks for itself. Otherwise denied.

1.8    Denied.

1.9    Admitted that the Rule provides that "[t]he scope of a Clean Water Act section 401 certification is limited to assuring that a discharge from a Federally licensed or permitted activity will comply with water quality requirements." The remainder of this paragraph states legal conclusions as to which no response is required. To the extent a response is required, it is denied.

1.10    Admitted that the Final Rule provides, in part: "The scope of a Clean Water Act section 401 certification is limited to assuring that a discharge from a Federally licensed or permitted activity will comply with water quality requirements." Further admitted that the Final Rule defines "certifying authority" as "the agency responsible for certifying compliance with applicable water

quality requirements in accordance with Clean Water Act section 401." Further admitted that the Final Rule defines "water quality requirements" as "applicable provisions of §§ 301, 302, 303, 306, and 307 of the Clean Water Act, and state or tribal regulatory requirements for point source discharges into waters of the United States." The remainder of this paragraph states legal conclusions as to which no response is required. To the extent a response is required, it is denied.

1.11    Admitted that the Final Rule provides, in part:

The certification requirement from a license or permit shall be waived upon . . .
(2) The certifying authority's failure or refusal to act on a certification request, including:
(i) Failure or refusal to act on a certification request within the reasonable period of time;
(ii) Failure or refusal to satisfy the requirements of § 121.7(c);
(iii) Failure or refusal to satisfy the requirements of § 121.7(e);
(iv) Failure or refusal to comply with other procedural requirements of section 401.

The remainder of this paragraph states legal conclusions as to which no response is required. To the extent a response is required, it is denied.

1.12    Admitted that EPA's commentary on the Rule states:
This final rule concludes the EPA's first comprehensive effort to promulgate federal rules governing the implementation of CWA section 401. The Agency's 1971 water quality certification regulations pre-dated the 1972 CWA amendments. This final rule therefore provides the EPA's first holistic analysis of the statutory text, legislative history,[FN6] and relevant case law informing the implementation of the CWA section 401 program by the Agency and its federal, State, and Tribal partners.

Otherwise denied.

1.13    Denied.

1.14    Admit that Plaintiff States seek a declaration that the Rule violates the Clean Water Act and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* (APA). Admit that the Plaintiff States request that the Court set aside and vacate the Rule. Otherwise denied.

**JURISDICTION AND VENUE**

2.1    Denied.

2.2    Admitted.

2.3    Admitted.

2.4    Denied. Intervenor States further answer that Plaintiffs allege in Paragraph 4.1 that

4

they "bring this action in their . . . proprietary capacities" which suggests real property is involved in this action.

## INTRADISTRICT ASSIGNMENT

3.1   Admitted.

## PARTIES

4.1   Admitted that the Plaintiff States are sovereign states of the United States of America. Admitted that the Plaintiff States purport to bring this action in their sovereign and proprietary capacities. Admitted that the Plaintiff States purport to bring this action as *parens patriae*. Otherwise denied.

4.2   Admitted.

4.3   Admitted.

## STATUTORY AND REGULATORY BACKGROUND

### The Administrative Procedure Act

5.1   This paragraph states legal conclusions as to which no response is required. To the extent a response is required, it is denied.

5.2   Admitted that 5 U.S.C. § 553 provides, in part: "General notice of proposed rule making shall be published in the Federal Register" and "[a]fter notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation."

5.3   Admitted.

5.4   This paragraph states legal conclusions as to which no response is required. To the extent a response is required, it is denied.

5.5   Admitted that 5 U.S.C. § 706 provides, in part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall . . . **(2)** hold unlawful and set aside agency action, findings, and conclusions found to be--**(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . [or] **(C)** in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]"

Otherwise denied.

5

1

2

3                           **The Clean Water Act**

4        5.6     Admitted that 33 U.S.C. § 1251(a) states, in part: "The objective of this chapter is to

5   restore and maintain the chemical, physical, and biological integrity of the Nation's waters."

6        5.7     Admitted that 33 U.S.C. § 1251(b) states, in part: "It is the policy of the Congress to

7   recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce,

8   and eliminate pollution, to plan the development and use (including restoration, preservation, and

9   enhancement) of land and water resources, and to consult with the Administrator in the exercise of

10  his authority under this chapter."

11       5.8     Denied.

12       5.9     Admitted that 33 U.S.C. § 1370 provides, in part:
          Except as expressly provided in this chapter, nothing in this chapter shall (1) preclude
13        or deny the right of any State or political subdivision thereof or interstate agency to
          adopt or enforce (A) any standard or limitation respecting discharges of pollutants, or
14        (B) any requirement respecting control or abatement of pollution; except that if an
          effluent limitation, or other limitation, effluent standard, prohibition, pretreatment
15        standard, or standard of performance is in effect under this chapter, such State or
          political subdivision or interstate agency may not adopt or enforce any effluent
16        limitation, or other limitation, effluent standard, prohibition, pretreatment standard,
          or standard of performance which is less stringent than the effluent limitation, or
17        other limitation, effluent standard, prohibition, pretreatment standard, or standard of
          performance under this chapter[.]
18

19       5.10    Admitted that 33 U.S.C. § 1341(a)(1) provides, in part: "Any applicant for a Federal

20  license or permit to conduct any activity . . . which may result in any discharge into the navigable

21  waters, shall provide the licensing or permitting agency a certification from the State in which the

22  discharge originates or will originate, or, if appropriate, from the interstate water pollution control

23  agency having jurisdiction over the navigable waters at the point where the discharge originates or

24  will originate, that any such discharge will comply with the applicable provisions of sections 1311,

25  1312, 1313, 1316, and 1317 of this title." Admitted that 33 U.S.C. § 1341(d) provides, in part: "Any

26  certification provided under this section shall set forth any effluent limitations and other limitations,

27  and monitoring requirements necessary to assure that any applicant for a Federal license or permit

28  will comply with any applicable effluent limitations and other limitations, under section 1311 or 1312

of this title, standard of performance under section 1316 of this title, or prohibition, effluent standard, or pretreatment standard under section 1317 of this title, and with any other appropriate requirement of State law set forth in such certification, and shall become a condition on any Federal license or permit subject to the provisions of this section."

5.11   Admitted that the authority reserved to States in Section 401 is meaningful and significant. Otherwise denied.

5.12   Denied.

5.13   Admitted that 33 U.S.C. § 1341 provides, in part, "If the State, interstate agency, or Administrator, as the case may be, fails or refuses to act on a request for certification, within a reasonable period of time (which shall not exceed one year) after receipt of such request, the certification requirements of this subsection shall be waived with respect to such Federal application."

5.14   Admitted that Congress has not amended the language of Section 401 since 1994. The Intervenor States lack knowledge or information sufficient to form a belief about the truth of the remainder of this paragraph; it is therefore denied.

**EPA's Longstanding Section 401 Regulations and Guidance**

5.15   Admitted that in 1971, EPA promulgated regulations regarding state water quality certifications. Otherwise denied.

5.16   Admitted that 33 U.S.C. § 1314(h) provides: "The Administrator shall, within one hundred and eighty days from October 18, 1972, promulgate guidelines establishing test procedures for the analysis of pollutants that shall include the factors which must be provided in any certification pursuant to section 1341 of this title or permit application pursuant to section 1342 of this title." Otherwise denied.

5.17 This paragraph states a legal conclusion as to which no response is required. To the extent a response is required, it is denied.

5.18   Admitted that EPA continued to apply the 1971 Regulations to implement section 401 following the CWA's enactment in 1972.

5.19   Denied.

5.20     Admitted that until September 10, 2020, 40 C.F.R. § 121.2(a)(3) provides, in part: "A certification made by a certifying agency shall include the following . . . .(3) A statement that there is a reasonable assurance that the activity will be conducted in a manner which will not violate applicable water quality standards[.]" Admitted that until September 10, 2020, 40 C.F.R. § 121.1(g) provides: "Water quality standards means standards established pursuant to section 10(c) of the Act, and State-adopted water quality standards for navigable waters which are not interstate waters."

5.21     Admitted that until September 10, 2020, 40 C.F.R. § 121.16(b) provides, in part:

> The certification requirement with respect to an application for a license or permit shall be waived upon:
> (a) Written notification from the State or interstate agency concerned that it expressly waives its authority to act on a request for certification; or
> (b) Written notification from the licensing or permitting agency to the Regional Administrator of the failure of the State or interstate agency concerned to act on such request for certification within a reasonable period of time after receipt of such request, as determined by the licensing or permitting agency (which period shall generally be considered to be 6 months, but in any event shall not exceed 1 year)

5.22     Admitted that in 1989, a guidance document entitled "Wetlands and 401 Certification-Opportunities and Guidelines for States and Eligible Indian Tribes" (1989 Guidance) was prepared by Katherine Ransel of the non-governmental Environmental Law Institute and Dianne Fish of EPA's Office of Wetlands Protection, Wetlands Strategies, and State Programs Division. Otherwise denied.

5.23     Admitted that the 1989 Guidance stated, in part: "The language of Section 401(a)(1) is written very broadly with respect to the activities it covers. '[A]ny activity, including but not limited to, the construction or operation of facilities, which <u>may</u> result in <u>any discharge</u> requires water quality certification." Admitted that the 1989 Guidance stated, in part: "The purpose of the water quality certification requirement, the Congress said, was to ensure that no license or permit would be issued for an activity through inadequate planning or otherwise could in fact become a source of pollution." Further answering, however, that the 1989 Guidance cited to Congressional floor debate as the basis for that statement. Otherwise denied.

5.24     Admitted that the 1989 Guidance stated, in part: "all of the potential effects of a proposed activity on water quality—direct and indirect, short and long term, upstream and downstream, construction and operation—should be part of a State's certification review." Admitted that the 1989 Guidance stated, in part: "Also, because the State's certification of a construction permit or license permit also operates as certification for an operating permit (except for certain instances specified in Section 401(a)(3)), it is imperative for a State review to consider all potential water quality impacts of the project, both direct and indirect, over the life of the project." Admitted that the 1989 Guidance also provided examples of conditions that States had placed on section 401 certifications. Admitted that the 1989 Guidance stated, in part, with respect to a certification by the State of Maryland:

> While few of these conditions are based directly on traditional water quality standards, all are valid and relate to maintenance of water quality or the designated use of waters in some way. Some of the conditions are clearly requirements of State or local law related to water quality other than those promulgated pursuant to CWA sections enumerated in Section 401(a)(1).

Otherwise denied.

5.25     Admitted that the 1989 Guidance stated, in part: "'Under Section 401(a)(1) a State will be deemed to have waived certification if it fails to act within 'a reasonable period of time (which shall not exceed one year) after receipt of such request.'" Otherwise denied.

5.26     Admitted that the 1989 Guidance stated, in part:

> It is also advisable for the States to adopt rules which reasonably protect against an unintended waiver due, for example, to insufficient information to make a certification decision or because project plans have changed enough to warrant a reevaluation of the impacts on water quality. Thus, after taking the federal agencies' regulations into account, the State's 401 certification regulations should link the timing for review to what is considered receipt of a complete application.

> Wisconsin, for instance, requires the applicant to submit a complete application for certification before the official agency review time begins. The State's regulations define the major components of a complete application, including the existing physical environment at the site, the size of the area affected, all environmental impact assessment information provided to the licensing or permitting agency, and the like. The rules State that the agency will review the application for completeness within 30 days of its receipt and notify the applicant of materials reasonably necessary for review. Although the application will be deemed 'complete' for purposes of review time if the agency does not request additional materials within 40 days of receipt application, the agency reserves the right to request additional information during the review process.

Otherwise denied.

5.27    Admitted that in April 2010 EPA's Office of Wetlands, Oceans, and Watersheds issued interim guidance entitled "Clean Water Act Section 401 Water Quality Certification: A Water Quality Protection Tool for States and Tribes" (2010 Interim Guidance). Further answering, the 2010 Interim Guidance stated, in part:

> While this new handbook is not a rule and does not create any legal requirements or set policy, it provides a wide-ranging description of §401 certification provisions and practices which may be helpful to states and tribes interested in using §401 as an effective water resource protection tool.  This document does not substitute for CWA section 401 itself, or the relevant EPA (and other federal or state/tribal) implementing regulations.  States, tribes, and federal licensing/permitting agencies may consider other approaches consistent with the CWA and those regulations.  EPA retains the discretion to revise this handbook in the future.

Otherwise denied.

5.28    Admitted that the 2010 Interim Guidance states, in part:

> As incorporated into the 1972 CWA, §401 water quality certification was intended to ensure that no federal license or permits would be issued that would prevent states or tribes from achieving their water quality goals, or that would violate CWA provisions. Specifically, the statute calls for states or tribes to base their certification on a consideration of whether the permit or license would be consistent with a list of CWA authorities including water quality standards and effluent limitations, as well as "any other appropriate requirement of State [or tribal] law set forth in such certification."
>
>         *   *   *   *   *
>
> Section 401 applies to any federal permit or license for an activity that may discharge into a water of the U.S.  The Ninth Circuit Court of Appeals has ruled that the discharge must be from a point source, and agencies in other jurisdictions have generally adopted the requirement.  Once these thresholds are met, the scope of analysis and potential conditions can be quite broad.  As the U.S. Supreme Court has held, once §401 is triggered, the certifying state or tribe may consider and impose conditions on the project activity in general, and not merely on the discharge, if necessary to assure compliance with the CWA and with any other appropriate requirement of state or tribal law.
>
> For example, water quality implications of fertilizer and herbicide use on a subdivision and golf course might be considered as part of a §401 certification analysis of a CWA §404 permit that would authorize discharge of dredged or fill material to construct the subdivision and golf course.

Otherwise denied.

5.29    Admitted that the 2010 Interim Guidance states, in part: "It is important to note that, while EPA-approved state and tribal water quality standards may be a major consideration driving §401 decision, they are not the only consideration." Otherwise denied.

5.30    Admitted that the 2010 Interim Guidance states, in part: "Generally, the state or tribe's §401 certification review timeframe begins once a request for certification has been made to the certifying agency accompanied by a complete application." Otherwise denied.

5.31    Admitted that since 1989, Congress has not amended the language of section 401. The Intervenor States lack knowledge or information sufficient to form a belief about the truth of the remainder of this paragraph; it is therefore denied.

### Executive Order 13868 and Section 401 Certifications

5.32    Admitted that on April 10, 2019, President Trump issued Executive Order 13,868. The text of the executive order speaks for itself. Otherwise denied.

5.33    Admitted that Executive Order 13, 868 states, in part:

Section 401 of the Clean Water Act (33 U.S.C. 1341) provides that States and authorized tribes have a direct role in Federal permitting and licensing processes to ensure that activities subject to Federal permitting requirements comply with established water quality requirements. Outdated Federal guidance and regulations regarding section 401 of the Clean Water Act, however, are causing confusion and uncertainty and are hindering the development of energy infrastructure.

Otherwise denied.

5.34    Admitted that Executive Order 13,868 states, in part:

(a) The Administrator of the Environmental Protection Agency (EPA) shall consult with States, tribes, and relevant executive departments and agencies (agencies) in reviewing section 401 of the Clean Water Act and EPA's related regulations and guidance to determine whether any provisions thereof should be clarified to be consistent with the policies described in section 2 of this order. This review shall include examination of the existing interim guidance entitled, "Clean Water Act Section 401 Water Quality Certification: A Water Quality Protection Tool for States and Tribes" (Section 401 Interim Guidance). This review shall also take into account federalism considerations underlying section 401 of the Clean Water Act and shall focus on:
(i) the need to promote timely Federal-State cooperation and collaboration;
(ii) the appropriate scope of water quality reviews;
(iii) types of conditions that may be appropriate to include in a certification;
(iv) expectations for reasonable review times for various types of certification requests; and
(v) the nature and scope of information States and authorized tribes may need in order to substantively act on a certification request within a prescribed period of time.

(b) Upon completion of the consultation and review process described in subsection (a) of this section, but no later than 60 days after the date of this order, the Administrator of the EPA shall:
(i) as appropriate and consistent with applicable law, issue new guidance to States and authorized tribes to supersede the Section 401 Interim Guidance to clarify, at minimum, the items set forth in subsection (a) of this section; and

11

(ii) issue guidance to agencies, consistent with the policies outlined in section 2 of this order, to address the items set forth in subsection (a) of this section.

(c) Upon completion of the consultation and review process described in subsection (a) of this section, but no later than 120 days after the date of this order, the Administrator of the EPA shall review EPA's regulations implementing section 401 of the Clean Water Act for consistency with the policies set forth in section 2 of this order and shall publish for notice and comment proposed rules revising such regulations, as appropriate and consistent with law. The Administrator of the EPA shall finalize such rules no later than 13 months after the date of this order.

(d) Upon completion of the processes described in subsection (b) of this section, the Administrator of the EPA shall lead an interagency review, in coordination with the head of each agency that issues permits or licenses subject to the certification requirements of section 401 of the Clean Water Act (401 Implementing Agencies), of existing Federal guidance and regulations for consistency with EPA guidance and rulemaking. Within 90 days of completion of the processes described in subsection (b) of this section, the heads of the 401 Implementing Agencies shall update their respective agencies' guidance. Within 90 days of completion of the processes described in subsection (c) of this section, if necessary, the heads of each 401 Implementing Agency shall initiate a rulemaking to ensure their respective agencies' regulations are consistent with the rulemaking described in subsection (c) of this section and with the policies set forth in section 2 of this order.

Otherwise denied.

5.35    Admitted that Executive Order 13, 868 states, in part:

Within 90 days of completion of the processes described in subsection (c) of this section, if necessary, the heads of each 401 Implementing Agency shall initiate a rulemaking to ensure their respective agencies' regulations are consistent with the rulemaking described in subsection (c) of this section and with the policies set forth in section 2 of this order.

Otherwise denied.

5.36    Admitted that on June 7, 2019, EPA issued guidance entitled "Clean Water Act Section 401 Guidance for Federal Agencies, States, and Authorized Tribes." The text of the guidance document speaks for itself. The Intervenor States lack knowledge or information sufficient to form a belief about the truth of the remainder of this paragraph; it is therefore denied.

5.37    Admitted.

5.38    Admitted that the EPA published an "Economic Analysis for the Proposed Clean Water Act Section 401 Rulemaking." The text of the Economic Analysis speaks for itself. Otherwise denied.

5.39    The text of the Economic Analysis speaks for itself. Otherwise denied.

5.40    Admitted that EPA held public hearings on the proposed Rule on September 5, 2109

12

and September 6, 2019, in Salt Lake City, Utah. Admitted that at least some Plaintiff States submitted written comments. The Intervenor States lack knowledge or information sufficient to form a belief about the truth of the remainder of this paragraph; it is therefore denied.

### The Final Section 401 Rule

5.41    Admitted that on June 1, 2020, EPA issued a press release stating, in part:

> Today, after speaking with U.S. stakeholders via conference call, U.S. Environmental Protection Agency (EPA) Administrator Andrew Wheeler announced a final rule that will help accelerate and promote the construction of important energy infrastructure across the United States, while ensuring the nation's waterways are protected. The agency's final rule increases the transparency and efficiency of the Clean Water Act Section 401 (Section 401) certification process in order to promote the timely review of infrastructure projects while continuing to ensure that Americans have clean water for drinking and recreation.
> "EPA is returning the Clean Water Act certification process under Section 401 to its original purpose, which is to review potential impacts that discharges from federally permitted projects may have on water resources, not to indefinitely delay or block critically important infrastructure," **said EPA Administrator Andrew Wheeler.** "Today, we are following through on President Trump's Executive Order to curb abuses of the Clean Water Act that have held our nation's energy infrastructure projects hostage, and to put in place clear guidelines that finally give these projects a path forward."

The Intervenor States lack knowledge or information sufficient to form a belief about the truth of the remainder of this paragraph; it is therefore denied.

5.42    Admitted.

5.43    Denied.

5.44    Admitted that the commentary accompanying the final Rule stated: "This final rule modernizes and clarifies the EPA's regulations and will help States, Tribes, federal agencies, and project proponents know what is required and what to expect during a section 401 certification process, thereby reducing regulatory uncertainty." Otherwise denied.

Limits on Scope of Section 401 Certification Review

5.45    Denied.

5.46    Admitted that in *Pud No. 1*, the Supreme Court stated: "Section 401(a)(1) identifies the category of activities subject to certification—namely, those with discharges. And § 401(d) is most reasonably read as authorizing additional conditions and limitations on the activity as a whole

once the threshold condition, the existence of a discharge, is satisfied." Otherwise denied.

5.47  This paragraph states legal conclusions as to which no response is required. To the extent a response is required, it is denied.

5.48  Denied.

5.49  Admitted that the final Rule defines "water quality requirements" as "applicable provisions of §§ 301, 302, 303, 306, and 307 of the Clean Water Act, and state or tribal regulatory requirements for point source discharges into waters of the United States." Otherwise denied.

.      5.50  The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this paragraph; it is therefore denied.

5.51  Denied.

5.52  Denied.

5.53  Denied.

Restrictions on Certification Request Process

5.54  This paragraph states legal conclusions as to which no response is required. To the extent a response is required, it is denied.

5.55  Admitted that the Final Rule states, in part:

(b) A certification request for an individual license or permit shall:
(1) Identify the project proponent(s) and a point of contact;
(2) Identify the proposed project;
(3) Identify the applicable federal license or permit;
(4) Identify the location and nature of any potential discharge that may result from the proposed project and the location of receiving waters;
(5) Include a description of any methods and means proposed to monitor the discharge and the equipment or measures planned to treat, control, or manage the discharge;
(6) Include a list of all other federal, interstate, tribal, state, territorial, or local agency authorizations required for the proposed project, including all approvals or denials already received;
(7) Include documentation that a pre-filing meeting request was submitted to the certifying authority at least 30 days prior to submitting the certification request;
(8) Contain the following statement: 'The project proponent hereby certifies that all information contained herein is true, accurate, and complete to the best of my knowledge and belief'; and
(9) Contain the following statement: 'The project proponent hereby requests that the certifying authority review and take action on this CWA 401 certification request within the applicable reasonable period of time.'

(c) A certification request for issuance of a general license or permit shall:
(1) Identify the project proponent(s) and a point of contact;

14

(2) Identify the proposed categories of activities to be authorized by the general license or permit for which certification is requested;

(3) Include the draft or proposed general license or permit;

(4) Estimate the number of discharges expected to be authorized by the proposed general license or permit each year;

(5) Include documentation that a pre-filing meeting request was submitted to the certifying authority at least 30 days prior to submitting the certification request;

(6) Contain the following statement: 'The project proponent hereby certifies that all information contained herein is true, accurate, and complete to the best of my knowledge and belief '; and

(7) Contain the following statement: 'The project proponent hereby requests that the certifying authority review and take action on this CWA 401 certification request within the applicable reasonable period of time.'

Otherwise denied.

5.56    Admitted that the commentary accompanying the final Rule states, in part: "The final rule notice also clarifies that certifying authorities may request additional information during the reasonable period of time, and the final rule preserves certifying authorities' ability to deny certification requests if they have inadequate information to determine whether a discharge complies with water quality requirements." Admitted that the commentary accompanying the final Rule states, in part: "[T]he burden is on the certifying authority to evaluate the certification request in good faith and to request information, documents, and materials that are within the scope of section 401 as provided in this final rule and that can be produced and evaluated within the reasonable period of time." Otherwise denied.

5.57    Admitted that the final Rule provides, in part: "The Federal agency shall establish the reasonable period of time either categorically or on a case-by-case basis. In either event, the reasonable period of time shall not exceed one year from receipt." Admitted that the final Rule defines "receipt" as "the date that a certification request is documented as received by a certifying authority in accordance with applicable submission procedures."

5.58    Admitted that the final Rule provides, in part: "The certifying authority is not authorized to request the project proponent to withdraw a certification request and is not authorized to take any action to extend the reasonable period of time other than specified in § 121.6(d)." Otherwise denied.

5.59    Admitted that the final Rule provides, in part:

(a) The certification requirement for a license or permit shall be waived upon:

(1) Written notification from the certifying authority to the project proponent and the

15

Federal agency that the certifying authority expressly waives its authority to act on a certification request; or

(2) The certifying authority's failure or refusal to act on a certification request, including:

(i) Failure or refusal to act on a certification request within the reasonable period of time;

(ii) Failure or refusal to satisfy the requirements of § 121.7(c);

(iii) Failure or refusal to satisfy the requirements of § 121.7(e); or

(iv) Failure or refusal to comply with other procedural requirements of <u>section 401</u>.

(b) A condition for a license or permit shall be waived upon the certifying authority's failure or refusal to satisfy the requirements of § 121.7(d).

Otherwise denied.

5.60    Denied.

5.61    Denied.

5.62    The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this paragraph; it is therefore denied.

## HARMS TO PLAINTIFF STATES

6.1    Denied.

6.2    Admitted that the Plaintiff States' respective jurisdictions encompass a substantial portion of the United States. Admitted that the water resources found within the Plaintiff States include the entirety of the Pacific Coast from Mexico to Canada, large portions of the Atlantic Coast, the Great Lakes and Lake Champlain, Chesapeake Bay and its tributaries, and the majority of the Columbia River. Admitted that Plaintiff States contain headwaters formed in the Sierra Nevada, Cascades, Rock, and Appalachian mountains. Admitted that many of the nation's largest rivers originate in and/or flow through the Plaintiff States, including the Mississippi, the Columbia, the Colorado, and the Hudson. The Intervenor States lack knowledge or information sufficient to form a belief about the truth of the remainder of this paragraph; it is therefore denied.

6.3    Admitted that at least some Plaintiff states have exercised section 401 authority to protect against adverse impacts to water quality from federally licensed or permitted activities within state borders. Further answering that at least some Plaintiff states have abused that authority. The remainder of this paragraph states legal conclusions as to which no response is required. To the extent a response is required, it is denied.

16

6.4     Admitted that the final Rule provides that "[t]he scope of a Clean Water Act section 401 certification is limited to assuring that a discharge from a Federally licensed or permitted activity will comply with water quality requirements." Further admitted that the final Rule defines "water quality requirements" as "applicable provisions of §§ 301, 302, 303, 306, and 307 of the Clean Water Act, and state or tribal regulatory requirements for point source discharges into waters of the United States." Otherwise denied.

6.5     The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this paragraph; it is therefore denied.

6.6     The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this paragraph; it is therefore denied.

6.7     Denied.

6.8     The Intervenor States lack knowledge or information sufficient to form a belief about the truth of the allegations that many Plaintiff States own or hold in trust the fish and other wildlife populations within their borders, and have certain statutory obligations to protect those resources; it is therefore denied. Otherwise denied.

6.9     Denied.

6.10    The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this paragraph; it is therefore denied.

6.11    The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this paragraph; it is therefore denied.

6.12    The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this paragraph; it is therefore denied.

6.13    The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this paragraph; it is therefore denied.

6.14    The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this paragraph; it is therefore denied.

6.15    Denied.

6.16    The Intervenor States lack knowledge or information sufficient to form a belief about

17

the truth of this paragraph; it is therefore denied.

6.17    The Intervenor States lack knowledge or information sufficient to form a belief about the truth of this paragraph; it is therefore denied.

6.18    Denied.

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**
**Arbitrary and Capricious and Not in Accordance with Law**
**Unlawful Implementation of Section 401 of the Clean Water Act**
**In Violation of the Administrative Procedure Act**
**(5 U.S.C. § 706)**

7.1    The State Intervenors reallege their answers to paragraphs 1.1 through 6.18.

7.2    Admitted that 5 U.S.C. § 706 provides that "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"

7.3    This paragraph states legal conclusions as to which no response is required. To the extent a response is required, it is denied.

7.4    Denied.

7.5    Denied.

**SECOND CAUSE OF ACTION**
**Arbitrary and Capricious and Not in Accordance with Law**
**Disregard of Prior Agency Policy and Practices**
**In Violation of the Administrative Procedure Act**
**(5 U.S.C. § 706)**

7.6    The State Intervenors reallege their answers to paragraphs 1.1 through 6.18.

7.7    This paragraph states legal conclusions as to which no response is required. To the extent a response is required, it is denied.

7.8    This paragraph states legal conclusions as to which no response is required. To the extent a response is required, it is denied.

7.9    Denied.

7.10    Denied.

7.11    Denied.

7.12    Denied.

**THIRD CAUSE OF ACTION**
**Arbitrary and Capricious and Not in Accordance with Law**

18

**Failure to Consider Statutory Objective and Impacts on Water Quality
In Violation of the Administrative Procedure Act
(5 U.S.C. § 706)**

7.13    The State Intervenors reallege their answers to paragraphs 1.1 through 6.18.

7.14    This paragraph states legal conclusions as to which no response is required. To the extent a response is required, it is denied.

7.15    This paragraph states legal conclusions as to which no response is required. To the extent a response is required, it is denied.

7.16    This paragraph states legal conclusions as to which no response is required. To the extent a response is required, it is denied.

7.17    This paragraph states legal conclusions as to which no response is required. To the extent a response is required, it is denied.

7.18    Denied.

7.19    Denied.

**FOURTH CAUSE OF ACTION
Agency Action in Excess of Jurisdiction
(5 U.S.C. § 706)**

7.20    The State Intervenors reallege their answers to paragraphs 1.1 through 6.18.

7.21    Admitted that 5 U.S.C. § 706 provides, in part: "The reviewing court shall . . . (2) hold unlawful and set aside agency action, findings, and conclusions found to be . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

7.22    Admitted that EPA identified the authority for the final Rule as "the Federal Water Pollution Control Act, 33 U.S. C. 1251 *et seq.*, including sections 304(h), 401, and 501(a)." Admitted that 33 U.S.C. § 1361(a) provides: "The Administrator is authorized to prescribe such regulations as are necessary to carry out his functions under this chapter." Otherwise denied.

7.23    Denied.

7.24    Admitted that 33 U.S.C. § 1314(h) provides: "The Administrator shall, within one hundred and eighty days from October 18, 1972, promulgate guidelines establishing test procedures for the analysis of pollutants that shall include the factors which must be provided in any certification pursuant to section 1341 of this title or permit application pursuant to section 1342 of this title."

19

Otherwise denied.

      7.25    Denied.

## RELIEF REQUESTED

States Intervenors deny that Plaintiffs are entitled to the relief requested, or any relief whatsoever. State Intervenors respectfully ask that the Court enter judgment against Plaintiffs and grant Defendants and State Intervenors such additional and further relief as the Court may deem just, proper, and necessary, including their costs and attorneys fees as provided by law.

## <u>DEFENSES</u>

Pursuant to Fed. R. Civ. P. 8(c), State Intervenors state the following defenses:

1.    This Court lacks jurisdiction.

2.    Plaintiffs have failed to state a claim on which relief can be granted.

3.    The Complaint does not state facts or claims upon which relief may be granted under the legal authority cited or under any other law, including without limitation because Plaintiffs fail to plead compliance with conditions-precedent to suit.

4.    There is neither factual nor legal support for injunctive or equitable relief.

5.    Any claim for injunctive or equitable relief is barred by Plaintiffs' unclean hands.

6.    Plaintiffs' theories would render the Clean Water Act unconstitutional in whole or part.

7.    The State Intervenors reserve the right to assert additional defenses.

Dated: August 28, 2020            Respectfully submitted,

                            **BENBROOK LAW GROUP, P.C.**

                            /s/ Bradley A. Benbrook

                            _____
                            BRADLEY A. BENBROOK (CA 177786)
                            STEPHEN M. DUVERNAY (CA 250957)
                            BENBROOK LAW GROUP, P.C.
                            400 Capitol Mall, Suite 2530
                            Sacramento, CA 95814
                            Tel: (916) 447-4900
                            brad@benbrooklawgroup.com
                            steve@benbrooklawgroup.com

                            *Counsel for State Intervenors*

20

1
2
3
4
5
6
7
8
9
10
11

JEFF LANDRY
  ATTORNEY GENERAL OF LOUISIANA

/s/ Joseph S. St. John
_____
ELIZABETH B. MURRILL (*pro hac vice* pending)
  *Solicitor General*
JOSEPH S. ST. JOHN (*pro hac vice* pending)
  *Deputy Solicitor General*
RYAN M. SEIDEMANN (*pro hac vice* forthcoming)
  *Assistant Attorney General*
LOUISIANA DEPARTMENT OF JUSTICE
1885 N. Third Street
Baton Rouge, LA 70804
Tel: (225) 326-6766
emurrill@ag.louisiana.gov
stjohnj@ag.louisiana.gov
seidemannr@ag.louisiana.gov

*Attorneys for the State of Louisiana*

12
13
14
15
16
17
18
19

TIM FOX
  ATTORNEY GENERAL OF MONTANA

/s/ Jon Bennion
_____
JON BENNION (*pro hac vice forthcoming*)
  *Chief Deputy Attorney General*
215 N. Sanders, Third Floor
P.O. Box 201401
Helena, MT 59620
Tel: (406) 444-2026
jonbennion@mt.gov

*Attorney for the State of Montana*

20
21
22
23
24
25
26
27
28

STATE INTERVENORS' ANSWER

1
2

**LESLIE RUTLEDGE**
  **ATTORNEY GENERAL OF ARKANSAS**

/s/ Nicholas J. Bronni

3
4
5
6
7
8
9

_____
NICHOLAS J. BRONNI (*pro hac vice forthcoming*)
  *Solicitor General*
VINCENT WAGNER (*pro hac vice forthcoming*)
  *Deputy Solicitor General*
OFFICE OF ARKANSAS ATTORNEY GENERAL
  LESLIE RUTLEDGE
323 Center Street, Suite 200
Little Rock, AK 72201
Tel: (501) 682-8090
nicholas.bronni@arkansasag.gov
vincent.wagner@arkansasag.gov

10
11

*Attorneys for the State of Arkansas*

12
13

**LYNN FITCH**
  **ATTORNEY GENERAL OF MISSISSIPPI**

/s/ Kristi H. Johnson

14
15
16
17
18

_____
KRISTI H. JOHNSON (*pro hac vice forthcoming*)
  *Solicitor General*
OFFICE OF MISSISSIPPI ATTORNEY
  GENERAL LYNN FITCH
P.O. Box 220
Jackson, MS 39205
Tel: (601) 359-5563
kristi.johnson@ago.ms.gov

19

*Attorney for the State of Mississippi*

20
21

**ERIC SCHMITT**
  **ATTORNEY GENERAL OF MISSOURI**

22

/s/ D. John Sauer

23
24
25
26

_____
D. John Sauer (*pro hac vice forthcoming*)
  *Solicitor General*
OFFICE OF THE MISSOURI
  ATTORNEY GENERAL
P.O. Box 899
Jefferson City, MO 65102-0899
Tel: (573) 751-1800
john.sauer@ago.mo.gov

27
28

*Attorney for the State of Missouri*

22

1

KEN PAXTON
  ATTORNEY GENERAL OF TEXAS

2

JEFFREY C. MATEER
  *First Assistant Attorney General*

3

RYAN L. BANGERT
  *Deputy First Assistant Attorney General*

4

DARREN L. MCCARTY
  *Deputy Attorney General for Civil Litigation*

5

6

/s/ David J. Hacker

7

_____

DAVID J. HACKER (CA 249272)
  *Associate Deputy Attorney General*

8

OFFICE OF THE TEXAS
  ATTORNEY GENERAL

9

P.O. Box 12548 (MC 001)
Austin, Texas 78711-2548

10

Tel: (512) 936-1700

11

david.hacker@oag.texas.gov

12

*Attorney for the State of Texas*

13

14

PATRICK MORRISEY
  ATTORNEY GENERAL OF WEST VIRGINIA

15

/s/ Lindsay S. See

16

_____

LINDSAY S. SEE (*pro hac vice forthcoming*)
  *Solicitor General*

17

State Capitol Building 1, Rm. 26-E

18

Charleston, WV 25305
Tel: (304) 558-2021

19

lindsay.s.see@wvago.gov

20

*Attorney for the State of West Virginia*

21

22

23

24

25

26

27

28

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FOR THE STATE OF WYOMING**

/s/ James C. Kaste

_____
JAMES C. KASTE (*pro hac vice forthcoming*)
 *Deputy Attorney General*
WYOMING ATTORNEY GENERAL'S OFFICE
2320 Capitol Avenue
Cheyenne, Wyoming 82002
Tel: (307) 777-6946
james.kaste@wyo.gov

*Attorney for the State of Wyoming*

STATE INTERVENORS' ANSWER