**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Elizabeth Holt Andrews (SBN 263206)
elizabeth.andrews@troutman.com
Three Embarcadero Center, Suite 800
San Francisco, California 94111-4057
Telephone:    415.477.5700
Facsimile:    415.477.5710

Misha Tseytlin (*pro hac vice* pending)
misha.tseytlin@troutman.com
Sean T.H. Dutton (*pro hac vice* pending)
sean.dutton@troutman.com
227 W. Monroe Street, Suite 3900
Chicago, IL 60606-5085
Telephone:    312.759.1920
Facsimile:    312.759.1939

Charles Sensiba (*pro hac vice* pending)
charles.sensiba@troutman.com
401 9th Street N.W., Suite 1000
Washington, D.C. 20004
Telephone:    202.274.2850
Facsimile:    202.274.2994

Andrea W. Wortzel (*pro hac vice* pending)
andrea.wortzel@troutman.com
1001 Haxall Point, 15th Floor
Richmond, VA 23219
Telephone:    804.697.1406
Facsimile:    804.697.1339

*Attorneys for Proposed Intervenor
National Hydropower Association*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| STATE OF CALIFORNIA, BY AND THROUGH ATTORNEY GENERAL XAVIER BECERRA AND THE STATE WATER RESOURCES CONTROL BOARD, STATE OF WASHINGTON, STATE OF NEW YORK, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF ILLINOIS, STATE OF MAINE, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF NEVADA, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NORTH CAROLINA, STATE OF OREGON, STATE OF RHODE ISLAND, STATE OF VERMONT, COMMONWEALTH OF VIRGINIA, STATE OF WISCONSIN, AND THE DISTRICT OF COLUMBIA,<br><br>            Plaintiffs,<br><br>      v.<br><br>ANDREW R. WHEELER, IN HIS OFFICIAL CAPACITY AS ADMINISTRATOR OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, AND THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>            Defendants. | Case No.  3:20-CV-04869-WHA<br>(Related Case No. 3:20-CV-04636-WHA)<br><br>**PROPOSED INTERVENOR NATIONAL HYDROPOWER ASSOCIATION'S NOTICE OF MOTION & MOTION TO INTERVENE PURSUANT TO FED. R. CIV. P. 24(A)(2) AND (B)(1); MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          October 15, 2020<br>Time:          8:00 AM<br>Judge:         Hon. William H. Alsup<br>Action Filed:  July 21, 2020<br>Courtroom:     Zoom |

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

1

## NOTICE OF MOTION AND MOTION TO INTERVENE

2      PLEASE TAKE NOTICE that, pursuant to Local Rule 7-1(b), on October 15, 2020, at

3  1:30 PM or as soon thereafter as counsel may be heard in the above-captioned court, via Zoom if

4  so ordered by the Court, Proposed Intervenor National Hydropower Association ("NHA") will

5  and hereby does move pursuant to Fed. R. Civ. P. 24(a)(2) to intervene as a defendant in the

6  above-captioned action as of right.  Alternatively, in the event that NHA is not allowed to

7  intervene as of right, NHA will and hereby does move to intervene permissively pursuant to Fed.

8  R. Civ. P. 24(b)(1)(B).

9      Pursuant to Fed. R. Civ. P. 24(a)(2), NHA seeks to intervene as of right because it "claims

10  an interest relating to the property or transaction that is the subject of the action" and the

11  "disposi[tion] of the action may as a practical matter impair or impede [NHA's] ability to protect

12  its interest."  In addition, the current Defendants do not adequately represent NHA's interests.

13  Alternatively, NHA seeks to intervene permissively because it "has a claim . . . that shares with

14  the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  NHA's

15  intervention will not unduly delay or prejudice the adjudication of any parties' rights in this

16  matter as the litigation is still in its early stages.  As more fully set forth in the accompanying

17  memorandum, this motion is based on the grounds that (1) the motion is timely; (2) NHA has

18  significant protectable interests, both for itself and for its members who presently operate

19  hydropower facilities subject to the rule and as advocates for the challenged rule; (3) the

20  disposition of this action without NHA's involvement could impede NHA's and its members'

21  ability to protect these interests; (4) the current parties do not adequately represent the specific

22  interests of NHA; and (5) NHA's position in support of the revised regulations plainly involves

23  common questions of law and fact with this action, and NHA's direct opposition to Plaintiffs'

24  claims satisfies the "common question" requirement for permissive intervention.

25      This motion is supported by this notice and motion; the attached memorandum of points

26  and authorities; the proposed order; the declaration of Dennis Cakert; all pleadings, papers, and

27  records in this action; and upon such oral and documentary evidence or argument as may be

28  presented at any hearing of this motion.

Case 3:20-cv-04869-WHA   Document 75   Filed 09/04/20   Page 3 of 12

PLEASE TAKE FURTHER NOTICE that this Motion is accompanied by NHA's

Proposed Answer, in accordance with Fed. R. Civ. P. 24(c).

Respectfully submitted,

Dated: September 4, 2020                 TROUTMAN PEPPER HAMILTON
                                         SANDERS LLP

                                         By:  */s/ Elizabeth Holt Andrews*
                                               Elizabeth Holt Andrews
                                               Misha Tseytlin (*pro hac vice* pending)
                                               Charles Sensiba (pro hac vice pending)
                                               Andrea W. Wortzel (*pro hac vice* pending)
                                               Sean T.H. Dutton (*pro hac vice* pending)

                                         *Attorneys for Proposed Intervenor*
                                         *NATIONAL HYDROPOWER ASSOCIATION*

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

-3-                                      Case No. 3:20-CV-04869-WHA
NOTICE OF MOTION, MOTION TO INTERVENE, AND POINTS & AUTHORITIES

1

**MEMORANDUM OF POINTS & AUTHORITIES**

2

**I.      INTRODUCTION**

3

Proposed Intervenor National Hydropower Association ("NHA") respectfully seeks leave

4

to intervene as a defendant in the above-captioned matter under Federal Rule of Civil Procedure

5

24,[1] to protect the interests of NHA and its members in the defense of the United States

6

Environmental Protection Agency ("EPA")'s final rule entitled "Clean Water Act Section 401

7

Certification Rule."  85 Fed. Reg. 42,210 (July 13, 2020).  Plaintiffs[2] have sought judgments

8

declaring that (1) the EPA, in enacting the rule, acted arbitrarily and capriciously and not in

9

accordance with the law, abused its discretion, and exceeded its authority, and (2) the rule is

10

unlawful, justifying vacatur.  Dkt. 1 at 27.  As described below, NHA and its members have

11

direct and substantial interests in the viability of the EPA's rule.

12

NHA is entitled to intervene in this action as a matter of right under Federal Rule of Civil

13

Procedure 24(a).  This motion is unarguably timely, filed before Defendants[3] have even

14

answered.  NHA represents public and private entities that own hydropower producing facilities,

15

all of whom are directly affected by this rule, which protects them from state overreach and

16

substantial expansion of the statutory scope of Clean Water Act Section 401.  Many of NHA's

17

members have been subject to practices employed by the states that abuse the framework

18

established by Clean Water Act Section 401.  If Plaintiffs' lawsuit were successful, this would

19

allow these practices to continue, impeding NHA members' interests in the certainty provided by

20

the EPA's rulemaking and undermining the cooperative federalism established by Section 401.

21

Finally, Defendants do not adequately represent NHA's interests.  The EPA is congressionally

22

authorized to protect and maintain the chemical integrity of America's waterways.  While NHA

23

---

24

[1] Undersigned counsel for NHA contacted counsel for the parties on September 2, 2020, seeking to obtain consent for this motion. Counsel for Proposed Intervenor States indicated they do not oppose. Counsel for Plaintiff States indicated they took no position and reserved the right to oppose. Counsel for Defendants indicated that they took no position.

25

[2] The State of California, through its Attorney General Xavier Becerra and the California Water Resources Control

26

Board; the States of Washington, New York, Colorado, Connecticut, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New Mexico, North Carolina, Oregon, Rhode Island, Vermont, and Wisconsin; the

27

Commonwealths of Massachusetts and Virginia; and the District of Columbia.

[3] Andrew R. Wheeler, in his official capacity as Administrator of the United States Environmental Protection

28

Agency, and the United States Environmental Protection Agency.

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

1  generally supports such interests, it is principally interested in promoting the continued

2  sustainability of hydropower as a renewable and reliable energy source.

3  Notwithstanding NHA's strong showing of its right to intervene, if this Court disagrees, it

4  should still grant NHA permissive intervention.  For permissive intervention, NHA need only

5  show that its defense shares a common question of law or fact with the main action, and that

6  intervention will not unduly prejudice the parties.  Here, NHA intends to argue, directly contrary

7  to Plaintiffs' allegations, that the EPA enacted its final rule consistent with the Administrative

8  Procedure Act and all other statutory authority.  Thus, NHA's defense undoubtedly shares with

9  this action numerous common questions of law and fact.  Finally, as noted above, this motion is

10  timely and no parties would be prejudiced by NHA's intervention, especially given NHA's

11  enthusiastic agreement to abide by all of this Court's scheduling orders.

12  **II.**     **INTEREST OF PROPOSED INTERVENOR**

13  NHA is a nonprofit national association dedicated to promoting the growth of clean,

14  affordable U.S. hydropower.  Declaration of Dennis Cakert ("Cakert Dec.") ¶ 4.  NHA seeks to

15  secure hydropower's place as a climate-friendly, renewable, and reliable energy source that

16  serves environmental, energy, and economic policy objectives.  Cakert Dec. ¶ 4.  NHA represents

17  more than 200 hydropower-industry companies in North America, including public- and investor-

18  owned utilities and independent power producers.  Cakert Dec. ¶ 5.  Its members are involved in

19  projects throughout the United States, including both federal and non-federal hydroelectric

20  facilities.  *See* Cakert Dec. ¶ 6.  In fact, NHA members own and operate the majority of the non-

21  federal waterpower-generating facilities in the United States.  *See* Cakert Dec. ¶ 6.

22  For over a century, hydropower has generated clean, affordable, and renewable energy.

23  *See* Cakert Dec. ¶ 7.  Today, hydropower provides energy to over 30 million American homes.  In

24  2019, hydroelectricity "accounted for about 6.6% of total U.S. utility-scale electricity generation

25  and 38% of total utility-scale renewable electricity generation."  Cakert Dec. ¶ 8.  Hydropower

26  also enables other energy sources, such as wind and solar, greater integration into the power grid,

27  remaining ready to produce power during periods of lower production.  Cakert Dec. ¶ 11.

28  At present, hydropower developments face a complex web of regulatory regimes and a

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

1   comprehensive regulatory approval process that involves the Federal Energy Regulatory

2   Commission, federal and state resource agencies, and, most relevant here, water quality

3   certification under section 401 of the Clean Water Act, 33 U.S.C. § 1341, pursuant to the EPA

4   regulations at issue in this case.  Cakert Dec. ¶ 12.  While such regimes and processes offer

5   important safeguards, they can also contain redundancies and inefficiencies that unnecessarily

6   slow the deployment of clean, renewable hydropower and delay the much-needed environmental

7   enhancements and benefits that it brings.  Cakert Dec. ¶ 13. For these reasons, NHA and its

8   members—as the regulated community subject to the EPA's rule—have a substantial and direct

9   financial interest in the EPA's rulemaking and interpretations of the Clean Water Act, especially

10   insofar as the EPA curbs state overreach, ensuring that the requirements imposed by states are

11   within the scope and follow the process established by Section 401.  Cakert Dec. ¶¶ 14, 19.

12   **III.   ARGUMENT**

13       **A.   NHA May Intervene As Of Right**

14       A party is entitled to intervene as of right under Rule 24(a)(2) when it "(i) timely moves to

15   intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may

16   have that interest impaired by the disposition of the action; and (iv) will not be adequately

17   represented by existing parties." *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*,

18   960 F.3d 603, 620 (9th Cir. 2020).  Although NHA maintains the burden to show that it has met

19   these intervention elements, the requirements are "construed broadly in favor of proposed

20   intervenors," *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th

21   Cir. 1992), because "[a] liberal policy in favor of intervention serves both efficient resolution of

22   issues and broadened access to the courts," *United States v. City of Los Angeles*, 288 F.3d 391,

23   397–98 (9th Cir. 2002).  Here, NHA meets all of Rule 24(a)(2)'s mandatory intervention

24   requirements.[4]

25

26   [4] Proposed intervenors are not required to satisfy the requirements for Article III standing to intervene on behalf of defendants.  *See Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 573 (9th Cir. 2014) (intervenor that is not initiating action or appeal "need not meet Article III standing requirements").  Nevertheless, NHA satisfies all standing criteria,

27   *see infra* at pp. 4–6, as Plaintiffs' lawsuit presents the direct threat of "an invasion of a legally protected interest that is concrete and particularized and actual or imminent." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64

28   (1997) (citations omitted).

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

### 1.     This Intervention Application Is Unarguably Timely

NHA's motion is timely.  To decide if a motion to intervene is timely, the Court considers three factors: (1) the stage of the litigation at which an applicant seeks to intervene; (2) possible prejudice to other parties; and (3) the reason for, and length of, the delay.  *Cal. Dep't. of Toxic Substances Control v. Commercial Realty Projects*, 309 F.3d 1113, 1119 (9th Cir. 2002).  In terms of the stage of the litigation, Defendants have not yet filed their Answer, meaning that NHA seeks to intervene in this lawsuit at the earliest possible "stage of the proceeding."  *Id.* Given the minimal litigation activity thus far, neither Plaintiffs nor Defendants would suffer any prejudice from NHA's intervention.  *See United States v. Alisal Water Corp.*, 370 F.3d 915, 922 (9th Cir. 2004).  And there has been no delay in NHA filing this motion.

### 2.     NHA Has A Direct And Significant Interest In The Continued Enforcement Of Defendants' Final Rule

A proposed intervenor also must "claim[ ] an interest relating to the property or transaction that is the subject of the action," Fed. R. Civ. P. 24(a)(2), which interest the Ninth Circuit has required to be "significantly protectable," *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1067 (9th Cir. 2018) (citation omitted).  The "operative inquiry" for all cases is "whether the interest is protectable under some law, and whether there is a relationship between the legally protected interest and the claims at issue."  *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1176 (9th Cir. 2011) (en banc) (citation omitted).  And the "relationship" requirement is "met if the resolution of the plaintiff's claims actually will affect the applicant."  *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (citation omitted).  This is a practical inquiry, intended to "dispos[e] of lawsuits by involving *as many apparently concerned persons as is compatible with efficiency and due process*."  *Id.* (emphasis added) (citation omitted).  Of particular relevance here, persons who are "precisely those [the government] intended to protect" with a law or regulation satisfy the interest test.  *Fresno Cty. v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980).

In enacting the final rule, the EPA expressly provided that "[t]his final rule modernizes and clarifies the EPA's regulations and will help States, Tribes, federal agencies, and project

-4-                                    Case No. 3:20-CV-04869-WHA

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

1   proponents know what is required and what to expect during a section 401 certification process,

2   thereby reducing regulatory uncertainty." 85 Fed. Reg. at 42,236. To that end, the rule clarifies

3   that a Clean Water Act Section 401 certification "is limited to assuring that a discharge from a

4   Federally licensed or permitted activity will comply with water quality requirements," which

5   requirements it defines as "applicable provisions of §§ 301, 302, 303, 306, and 307 of the Clean

6   Water Act, and state or tribal regulatory requirements for point source discharges into waters of

7   the United States." *Id.* at 42,285 (quoting proposed rules 40 C.F.R. §§ 121.1(n) & 121.3). The

8   rule also requires all conditional grants or denials of certification requests to include justification

9   and direct citation to the water quality standard impacted by the project. *Id.* at 42,286 (quoting

10   proposed rule 40 C.F.R. § 121.7). And the rule honors the statutory text by making clear that

11   States cannot evade the statute's one-year maximum for acting on permit application under

12   Section 401, *id*. at 42,235, 42,261, consistent with the D.C. Circuit's reasoning in *Hoopa Valley*

13   *Tribe v. FERC*, 913 F.3d 1099 (D.C. Cir. 2019).

14          NHA has a substantial interest in this litigation, for which intervention is necessary. In

15   their Complaint, Plaintiffs specifically challenge the EPA's rule in multiple respects. Dkt. 1 at 6,

16   10–17. Plaintiffs seek to have this Court "set aside [the rulemaking] as arbitrary, capricious, and

17   not in accordance with law." *Id.* at 24–26. Thus, Plaintiffs' success in this lawsuit would

18   "direct[ly]" impede, *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981), NHA's and its

19   members' interests in the protection and certainty provided by the rule. NHA's members who

20   operate non-federal waterpower-generating facilities are subject to Clean Water Act Section 401

21   certification requirements, and are "precisely those [project proponents] [the EPA] intended to

22   protect" with this rulemaking. *Andrus*, 622 F.2d at 438. As an association representing

23   companies that are directly regulated under the Clean Water Act, NHA has a concrete interest in

24   defending the EPA's regulations, and falls within the class of parties routinely granted

25   intervention of right in cases reviewing agency actions. *Cf. Mil. Toxics Project v. EPA*, 146 F.3d

26   948, 954 (D.C. Cir. 1998). Therefore, NHA has a "significantly protectable interest," *Allied*

27   *Concrete & Supply Co.*, 904 F.3d at 1067 (citation omitted), that is "direct" and "non-contingent,"

28   *Dilks*, 642 F.2d at 1157, and which the outcome of this case, and the continued applicability of

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

1    the rule, will affect.  The "fact that California brought this lawsuit seeking to invalidate the

2    [regulation], or restrict its sweep, is proof in itself of the efficacy of [the regulation] and its

3    significance to" NHA.  *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006).

4
             **3.      NHA's Ability To Protect Its Interests, As A Practical Matter, May Be
5                      Impaired Or Impeded by Disposition of this Action**

6             Having found that a party has a significant protectable interest, courts "have little

7    difficulty concluding that the disposition of th[e] case may, as a practical matter, affect it."  *Id.*

8    "If an absentee would be substantially affected in a practical sense by the determination made in

9    an action, he should, as a general rule, be entitled to intervene."  *Citizens for Balanced Use v.*

10   *Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (citation omitted).

11            Here, there is no doubt that NHA's and its members' interests will be adversely affected

12   by this lawsuit if Plaintiffs prevail.  Plaintiffs seek to invalidate the EPA rule, which rule benefits

13   NHA and its members by clarifying the scope and process for receiving Clean Water Act Section

14   401 certifications, thereby curbing state overreach.  Dkt. 1 at 6, 10–17, 24–26.  This rule

15   "promote[s] consistent implementation of section 401 and streamline[s] federal license and permit

16   processes," 85 Fed. Reg. at 42,220, and "eliminates the possibility of inconsistent interpretation

17   and enforcement of the certification conditions in the federal license or permit," thereby

18   "increasing the likelihood that project proponents will be able to comply with the certification

19   conditions," *id.* at 42,276.  NHA and its members, or "project proponents," are expressly among

20   the entities that EPA intended this rule to "help."  *Id.* at 42,236.  If Plaintiffs are successful, then

21   NHA and its members will face a more confusing and uncertain regulatory process for any new

22   hydropower projects, without the "help" of the EPA's recent regulatory progress.  *Id.*  This would

23   "substantially affect[ ]," *Lockyer*, 450 F.3d at 442, and gravely harm NHA and its members

24   engaged in the hydropower industry.  Therefore, this factor also supports mandatory intervention.

25            **4.      The Existing Parties Do Not Adequately Represent NHA's Interests**

26            For the adequacy-of-representation element, the Court examines: "(1) whether the interest

27   of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments;

28   (2) whether the present party is capable and willing to make such arguments; and (3) whether a

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

1  proposed intervenor would offer any necessary elements to the proceeding that other parties

2  would neglect," with the comparison of interests being the "most important factor." *Citizens*, 647

3  F.3d at 898.  The proposed-intervenor's burden on this is "minimal" and will be satisfied by

4  "demonstrat[ing] that representation of its interests '*may be*' inadequate." *Id.* (emphasis added;

5  citation omitted).  When a private party seeks to intervene and join the defense with a government

6  entity, the government's interests are not "identical to the individual parochial interest of a

7  particular group just because both entities occupy the same posture in the litigation." *Id.* at 899;

8  *see also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736–37 (D.C. Cir. 2003).  At this early

9  stage of the litigation, NHA is not required "to anticipate specific differences in trial strategy";

10  instead, NHA only must show a "difference in interests." *Sw. Ctr. for Biological Diversity v.*

11  *Berg*, 268 F.3d 810, 824 (9th Cir. 2001).

12       No party to the dispute will adequately represent NHA's and its members' interests, and

13  NHA has met this "minimal" burden. *Citizens*, 647 F.3d at 898 (citation omitted).  Plaintiffs

14  obviously cannot represent NHA's interests, because these two are diametrically opposed

15  regarding the viability of the EPA's rulemaking.  Nor can Defendants adequately represent

16  NHA's interests.  Defendant EPA Administrator is the federal official charged with administering

17  the Clean Water Act and implementing Congressional objectives.  33 U.S.C. § 1251(d).  Central

18  to these Congressional objectives is his duty "to restore and maintain the chemical, physical, and

19  biological integrity of the Nation's waters." *Id.* § 1251(a).  NHA, on the other hand, is "dedicated

20  to promoting the growth of clean, affordable U.S. hydropower."  Cakert Dec. ¶ 4. While the

21  *benefits* of hydropower include its status as a "climate-friendly, renewable, and reliable energy

22  source that serves national environmental, energy, and economic policy objectives," Cakert Dec.

23  ¶ 4, NHA's core interests are the promotion of hydropower as an industry.  And NHA's members

24  are regulated by the rule, while the EPA is regulator.  Cakert Decl. ¶¶ 12, 14.  This gives NHA an

25  "individual parochial interest" not necessarily in line with the EPA's goals. *Citizens*, 647 F.3d at

26  899 (citation omitted).

27       That NHA and the EPA are likely to have the same *ultimate* goal—defending the EPA's

28  rule—is insufficient to deny NHA intervention as of right.  The EPA may well be focused to a

NOTICE OF MOTION, MOTION TO INTERVENE, AND POINTS & AUTHORITIES

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

1   greater extent than NHA on issues of administrative convenience and flexibility.  On the other

2   hand, NHA is likely to be focused to a greater degree than the EPA on the impact of the rule—

3   and its potential vacatur—on the business of NHA's members and more broadly on the

4   development of hydropower as an important renewable resource.  As the Ninth Circuit has held,

5   interests sufficiently diverge for purposes of intervention when a government entity's concerns

6   are broader than the business motives of a proposed intervenor.  *Berg*, 268 F.3d at 823–24; *see*

7   *also Fund for Animals*, 322 F.3d at 736 ("[W]e have often concluded that governmental entities

8   do not adequately represent the interests of aspiring intervenors.").  Therefore, the Court cannot

9   assume that the EPA will "undoubtedly make all of [NHA]'s arguments."  *Citizens*, 647 F.3d at

10   898 (citation omitted).  And given this likely distinction between NHA and the EPA, "there is

11   sufficient doubt about the adequacy of representation to warrant intervention."  *Trbovich v.*

12   *United Mine Workers of Am.*, 404 U.S. 528, 538 (1972).  Therefore, this element too supports

13   NHA's motion for intervention of right.

14   *        *        *

15   For these reasons, NHA has met its burden on all four elements of intervention as of right,

16   and the Court should grant this motion.

17   **B.        Alternatively, NHA Should Be Permitted To Intervene Under Rule 24(b)**

18   Should the Court conclude that NHA is not entitled to intervene as a matter of right, the

19   Court should nonetheless permit NHA to intervene under Rule 24(b).  For a timely motion for

20   permissive intervention as a defendant "to give 'defense' of the government's rulemaking," "[a]ll

21   that is necessary . . . is that [the] intervenor's claim or defense and the main action have a

22   question of law or fact in common."  *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108

23   (9th Cir. 2002), *overruled in part on other grounds as stated in Wilderness Soc'y*, 630 F.3d at

24   1178–79.  The Court should also "consider whether the intervention will unduly delay or

25   prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b).

26   Permissive intervention here is plainly appropriate.  NHA intends to litigate in defense of

27   the rule, and, given Plaintiffs' Complaint, Dkt. 1 at 24–26, this places NHA's defense within the

28   confines of the "main action."  *Kootenai Tribe*, 313 F.3d at 1108 (citation omitted).  Furthermore,

NOTICE OF MOTION, MOTION TO INTERVENE, AND POINTS & AUTHORITIES

1   and as discussed above, *see*, *supra*, Part III.A.1., the case is in its infancy, so neither Plaintiffs nor

2   Defendants will suffer any prejudice if NHA is permitted to intervene. *See Alisal Water Corp.*,

3   370 F.3d at 922. And, finally, NHA is willing to abide by all of the Court's scheduling orders,

4   further supporting permissive intervention here. *See Kootenai Tribe*, 313 F.3d at 1111 n.10. In

5   such cases, where an intervention motion is "filed near the case outset and the [proposed

6   intervenors] said they could abide the court's briefing and procedural scheduling orders, there [is]

7   no issue whatsoever of undue delay." *Id.* Therefore, even if this Court concludes that NHA may

8   not intervene as of right, it should then grant it permission to intervene in this lawsuit.

9   **IV.    CONCLUSION**

10          This Court should grant NHA's motion to intervene, and the accompanying Proposed

11   Answer should be accepted for filing.

13                                              Respectfully submitted,

15   Dated:  September 4, 2020              TROUTMAN PEPPER HAMILTON
                                            SANDERS LLP

16                                          By: */s/ Elizabeth Holt Andrews*
17                                              Elizabeth Holt Andrews
                                                Misha Tseytlin (*pro hac vice* pending)
18                                              Charles Sensiba (pro hac vice pending)
                                                Andrea W. Wortzel (*pro hac vice* pending)
19                                              Sean T.H. Dutton (*pro hac vice* pending)

20                                          *Attorneys for Proposed Intervenor*
                                            *NATIONAL HYDROPOWER ASSOCIATION*

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111-4057

NOTICE OF MOTION, MOTION TO INTERVENE, AND POINTS & AUTHORITIES