Clare Ellis (SBN No. 317773)
cellis@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
50 California Street, Suite 1700
San Francisco, CA 94111
Telephone: (415) 975-3708
Facsimile: (415) 975-3701

George P. Sibley, III (VA Bar No. 48773) (*pro hac vice pending*)
gsibley@HuntonAK.com
Deidre G. Duncan (D.C. Bar No. 461548) (*pro hac vice pending*)
dduncan@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
Telephone: (804) 788-8262
Facsimile: (804) 788-8218

*Counsel for Proposed Intervenor-Defendants*
*American Petroleum Institute and*
*Interstate Natural Gas Association of America*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO**

| | |
|---|---|
| AMERICAN RIVERS, et al.; | First Filed Case: No. 3:20-cv-04636-WHA |
| Plaintiffs, | Related Case: No. 3:20-cv-04869-WHA |
| v. | **AMERICAN PETROLEUM INSTITUTE AND INTERSTATE NATURAL GAS ASSOCIATION OF AMERICA:** |
| ANDREW R. WHEELER, et al., | |
| Defendants. | **(1) NOTICE OF MOTION AND MOTION TO INTERVENE IN NO. 3:20-CV-04869-WHA; AND** |
| | **(2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | CASE NO.: 3:20-CV-04636-WHA |
| | *[Proposed] Orders filed concurrently herewith]* |
| | Date:          October 8, 2020 |
| | Time:          8:00 a.m. |
| | Courtroom:  12 |
| | Judge:          Hon. William H. Alsup |

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA 94111

STATE OF CALIFORNIA, et al.;

             Plaintiffs,

        v.

ANDREW R. WHEELER, et al.,

             Defendants.

CASE NO.: 3:20-CV-04869-WHA

**Hunton Andrews Kurth LLP**
50 California Street, Suite 1700
San Francisco, CA  94111

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on October 8, 2020, at 8:00 a.m., or as soon thereafter as this matter may be heard before the Honorable William H. Alsup, the American Petroleum Institute (API) and the Interstate Natural Gas Association of America (INGAA) (collectively the Coalition) will and hereby do move to intervene in this matter, pursuant to Rule 24 of the Federal Rules of Civil Procedure, to defend against the challenge to the U.S. Environmental Protection Agency's July 13, 2020, final rule entitled "Clean Water Act Section 401 Certification Rule," 85 Fed. Reg. 42,210 (July 13, 2020), brought by the State of California and others (together, Plaintiffs) in No. 3:20-cv-04869-WHA. The Coalition requests that this motion be heard on October 8, 2020 at 8:00 am for efficiency, since the hearing on the motion to intervene filed by the State of Louisiana and other States is scheduled to be heard at that time..

As demonstrated in the accompanying memorandum, the Coalition is entitled to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2) because: (1) the motion to intervene is timely; (2) the Coalition has a significant protectable interest relating to the subject of the suit; (3) that interest may be impaired or impeded by the disposition of this case; and (4) none of the other parties adequately represent the Coalition's interests.  In the event that the Coalition is not granted intervention as of right, it requests that it be granted permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(1)(B). The defenses that the Coalition would assert present questions of law and fact in common with the underlying suit and would respond directly to the Plaintiffs' claims.

Counsel for API and INGAA met and conferred with counsel for the Parties in this matter, in advance of filing this Motion, in an effort to negotiate a stipulation for intervention. Plaintiffs indicate that they take no position on the motion but reserve the right to oppose it after seeing the Memorandum of Points and Authorities in support of the Motion.  The federal Defendants take no position on the Motion.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA  94111

1      This Motion is made based upon this Notice of Motion and Motion, the accompanying

2  Memorandum of Points and Authorities, the declarations of Robin Rorick and Joan Dreskin, the

3  pleadings and papers on file, and upon such oral argument as may be made at the hearing.

4      The Coalition respectfully requests that the Court grant this Motion. A proposed order is

5  filed herewith.

6  DATED:  September 4, 2020                **HUNTON ANDREWS KURTH LLP**

7

8                                        By:   /s/ *Clare Ellis*
                                             Clare Ellis
9                                            George P. Sibley, III
                                             Deidre G. Duncan
10                                           *Counsel for Proposed Intervenor-*
                                             *Defendants American Petroleum*
11                                           *Institute and Interstate Natural Gas*
                                             *Association of America*

**Hunton Andrews Kurth LLP**
50 California Street, Suite 1700
San Francisco, CA  94111

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................... 1

II.    STATEMENT OF INTERESTS ................................................................................. 2

       A.     API ............................................................................................................... 2

       B.     INGAA .......................................................................................................... 3

III.   ARGUMENT ............................................................................................................. 5

       A.     The Coalition Is Entitled to Intervene as of Right. ....................................... 5

              1.     The Motion to Intervene is Timely. .................................................... 5

              2.     The Coalition Has a Direct and Recognized Interest in the Final
                     Rule. ..................................................................................................... 6

              3.     The Coalition's Interests May Be Impaired or Impeded by the
                     Disposition of this Litigation. ........................................................... 11

              4.     The Current Parties Do Not Adequately Represent the Coalition's
                     Interests. ............................................................................................ 12

       B.     Alternatively, the Coalition Should Be Granted Permissive Intervention. ... 16

       C.     The Coalition Should Be Allowed To File Its Answer After The Federal
              Defendants. ................................................................................................... 17

IV.    CONCLUSION......................................................................................................... 19

**Hunton Andrews Kurth LLP**
50 California Street, Suite 1700
San Francisco, CA  94111

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE
CASE NO.:  3:20-cv-04869-WHA

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003) ...........................................................................10

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992) ........................................................................17, 19

*California v. Bureau of Land Mgmt.*,
   No. 18-cv-00521, 2018 WL 3439453 (N.D. Cal. July 17, 2018) ...........................8

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
   152 F.3d 1184 (9th Cir. 1998) ...........................................................................12

*Chevron, U.S.A. Inc., v. Natural Resources Defense Council, Inc.*,
   467 U.S. 837 (1984)............................................................................................14

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
   647 F.3d 893 (9th Cir. 2011) ...................................................................6, 11, 12

*Conservation Law Found. of New England, Inc. v. Mosbacher*,
   966 F.2d 39 (1st Cir. 1992)................................................................................13

*Daggett v. Comm'n on Governmental Ethics & Election Practices*,
   172 F.3d 104 (1st Cir. 1999) ..............................................................................17

*Driftless Area Land Conservancy v. Huebsch*,
   No. 20-1350, 2020 WL 4592147 (7th Cir. Aug. 11, 2020) ...................................7

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
   297 F. Supp. 3d 261 (D.P.R. 2017)......................................................................19

*Fresno Cty. v. Andrus*,
   622 F.2d 436 (9th Cir. 1980) .............................................................................10

*Ga. River Network v. U.S. Army Corps of Eng'rs*,
   334 F. Supp. 2d 1329 (N.D. Ga. 2003)..................................................................7

*Georgia v. U.S. Army Corps of Eng'rs*,
   302 F.3d 1242 (11th Cir. 2002) .........................................................................12

*Gibraltar Mausoleum Corp. v. Cedar Park Cemetery Ass'n*,
   No. 92 C 5228, 1993 WL 135454 (N.D. Ill. Apr. 29, 1993)................................18

ii

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA  94111

*Idaho Farm Bureau Fed'n v. Babbitt*,
  58 F.3d 1392 (9th Cir. 1995) ...................................................................................6

*Kentuckians for the Commonwealth, Inc. v. Rivenburgh*,
  204 F.R.D. 301 (S.D. W.Va. 2001).........................................................................8

*Kootenai Tribe of Idaho v. Veneman*,
  313 F.3d 1094 (9th Cir. 2002) .............................................................................16

*Marshall v. Meadows*,
  921 F. Supp. 1490 (E.D. Va. 1996) ......................................................................18

*N.Y. Pub. Interest Research Grp., Inc. v. Regents of Univ. of State of New York*,
  516 F.2d 350 (2d Cir. 1975) (per curiam) .............................................................7

*NAACP v. New York*,
  413 U.S. 345 (1973) ...............................................................................................5

*Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Serv.*,
  545 U.S. 967 (2005)..............................................................................................15

*Nat'l Farm Lines v. Interstate Commerce Comm'n*,
  564 F.2d 381 (10th Cir. 1977) ...............................................................................7

*Ohio Valley Envtl. Coal. v. U.S. Army Corps of Eng'rs*,
  243 F.R.D. 253 (S.D. W.Va. 2007)........................................................................7

*Parker v. Morton*,
  No. 18-00234-KD-B, 2019 WL 1645207 (S.D. Ala. Apr. 16, 2019) ...................18

*Perry v. Schwarzenegger*,
  630 F.3d 898 (9th Cir. 2011) .........................................................................10, 16

*PUD No. 1 of Jefferson County v. Washington Department of Ecology*,
  511 U.S. 700 (1994)........................................................................................14, 15

*Sagebrush Rebellion, Inc. v. Watt*,
  713 F.2d 525 (9th Cir. 1983) ...............................................................................15

*Sierra Club, Inc. v. EPA*,
  358 F.3d 516 (7th Cir. 2004) ...............................................................................16

*Sierra Club v. EPA*,
  995 F.2d 1478 (9th Cir. 1993) ...............................................................................6

*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) .................................................................................7

**Hunton Andrews Kurth LLP**
**50 California Street, Suite 1700**
**San Francisco, CA  94111**

iii

*South Dakota v. Ubbelohde*,
  330 F.3d 1014 (8th Cir. 2003) ..................................................................12

*Spangler v. Pasadena City Bd. of Educ.*,
  552 F.2d 1326 (9th Cir. 1977) ..................................................................16

*Spring Constr. Co. v. Harris*,
  614 F.2d 374 (4th Cir. 1980) ....................................................................18

*Sw. Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) ........................................................10, 11, 12

*Trbovich v. United Mine Workers*,
  404 U.S. 528 (1972) ..................................................................................12

*United States v. Aerojet Gen. Corp.*,
  606 F.3d 1142 (9th Cir. 2010) ....................................................................5

*United States v. Albert Inv. Co.*,
  585 F.3d 1386 (10th Cir. 2009) ................................................................11

*United States v. Alisal Water Corp.*,
  370 F.3d 915 (9th Cir. 2004) ........................................................5, 10, 11

*United States v. City of Hialeah*,
  899 F. Supp. 603 (S.D. Fla. 1994) ..........................................................18

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) ................................................................5, 6

*United States v. Metro. St. Louis Sewer Dist.*,
  569 F.3d 829 (8th Cir. 2009) ....................................................................17

*Utahns for Better Transp. v. U.S. Dep't of Transp.*,
  295 F.3d 1111 (10th Cir. 2002) ..................................................................7

*Westchester Fire Ins. Co. v. Mendez*,
  585 F.3d 1183 (9th Cir. 2009) ............................................................18, 19

*WJA Realty Ltd. P'ship v. Nelson*,
  708 F. Supp. 1268 (S.D. Fla. 1989) ........................................................18

**Federal Statutes**

15 U.S.C. § 717f(c)(1)(A)...............................................................................4, 6

33 U.S.C. § 1341(a)(1)......................................................................................13

33 U.S.C. § 1344...............................................................................................6

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA  94111

iv

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA 94111

**Federal Register**

85 Fed. Reg. 42,210 (July 13, 2020)................................................................................1

85 Fed. Reg. 42,224–25 .............................................................................................15

85 Fed. Reg. 42,229 ...................................................................................................15

85 Fed. Reg. at 42,233–34 ..........................................................................................15

**Federal Rules**

Fed. R. Civ. P. 24(a)(2)...............................................................................5, 6, 16, 19

Fed. R. Civ. P. 24(b)(1)(B) ...............................................................................16, 19

Fed. R. Civ. P. 24(c) ...........................................................................................17, 18

**Docketed Material**

Fed. Defs.' Resp. to States' & to Private Party Pls.' Mots. for Summ. J., *Texas v. EPA*, No. 3:15-cv-00162 (S.D. Tex. Nov. 8, 2018) (Dkt. 170) ..............................16

Order Denying Mots. to Intervene, *California v. Wheeler*, No. 3:20-cv-03005 (N.D. Cal. Aug. 13, 2020) ..........................................................14

United States' Resp. to Pls.' & Intervenor Pls.' Mots. for Summ. J., *Georgia v. Wheeler*, No. 2:15-cv-00079-LGW-BWC (S.D. Ga. Oct. 10, 2018) (Dkt. 215)..................16

**Miscellaneous**

Domestic Energy Producers Alliance, Comments on Updating Regulations on Water Quality Certification, Proposed Rule, 84 Fed. Reg. 44,080 (Aug. 22, 2019) (Oct. 21, 2019), EPA-HQ-OW-2019-0405-0935, https://www.regulations.gov/document?D=EPA-HQ-OW-2019-0405-0935 ..........................3

INGAA, Comments on EPA's Proposal to Update Regulations on Clean Water Act Section 401 Water Quality Certification, 84 Fed. Reg. 44,080 (Aug. 22, 2019) (Oct. 21, 2019), EPA-HQ-OW-2019-0405-0918, https://www.regulations.gov/document?D=EPA-HQ-OW-2019-0405-0918 ..........................4

Natural Gas Council, Comments on Updating Regulations on Water Quality Certification, Proposed Rule, 84 Fed. Reg. 44,080 (Aug. 22, 2019) (Oct. 21, 2019), EPA-HQ-OW-2019-0405-0852, https://www.regulations.gov/document?D=EPA-HQ-OW-2019-0405-0852 (Natural Gas Council Comments)................................................................................3

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA 94111

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO INTERVENE**</u>

## I.    INTRODUCTION

The Clean Water Act (CWA) uses a "cooperative federalism" approach to achieve its aims. It carves out complementary roles for federal agencies on the one hand and States and tribes on the other. CWA section 401 gives each State and tribe an important but limited say in the licensing of federal projects that could affect water quality. Specifically, federal agencies cannot license activities that may result in a discharge into waters of the United States until, the State whose waters would be affected by the discharge certifies that the activity will comply with applicable water-quality requirements or waives the section 401 requirement, either affirmatively or through inaction. Section 401 authority is powerful—when triggered, State certification or waiver is an essential requirement for the federally-licensed activity to proceed. But to preserve the CWA's federal-State balance, that authority is also limited—section 401 only authorizes States to address water quality, and only within reasonable time limits that can never exceed one year.

Some States have exceeded these limits. They have improperly used procedural gimmicks to extend the time the CWA gives them to make certification decisions.  And they have used section 401 to effectively veto projects based on non-water quality considerations, such as preferences regarding energy policy, which infringes on the federal government's exclusive authority. These abuses of section 401 have acutely affected the members of American Petroleum Institute (API) and the Interstate Natural Gas Association of America (INGAA) (collectively, the Coalition) who routinely seek federal authorizations that require section 401 certification and recently have been subjected to these extra-legal State reviews.

On July 13, 2020, the U.S. Environmental Protection Agency (EPA) published a final rule that aims to stop these abuses and, for the first time, provides a comprehensive framework for the implementation of section 401.  *See* Clean Water Act Section 401 Certification Rule, 85

1  Fed. Reg. 42,210 (July 13, 2020) (the Rule). The Rule restores the federal-State balance by

2  clarifying the limits section 401 places on State action. Specifically, the Rule gives effect to

3  Congress's decision to limit the scope of State review to water quality determinations and the

4  duration of that review to a reasonable timeframe not to exceed one year.

5          Plaintiffs—the State of California and 20 other States—challenge the Rule, claiming it

6  unlawfully limits the States' authority. State Compl. ¶¶ 7.1–7.5. The Plaintiffs also allege that in

7  promulgating the Rule, EPA improperly disregarded its prior agency policy and practice without

8  reasoned explanation. State Compl. ¶¶ 7.6–7.12.  And they claim that the Rule is arbitrary and

9  capricious, because EPA failed to consider the applicable statutory requirements and important

10  issues, including the protection of water quality. State Compl. ¶¶ 7.13–7.19. Due to these alleged

11  failures, the Plaintiffs argue that the Rule is arbitrary and capricious, an abuse of discretion, not

12  in accordance with law, and in excess of jurisdiction in violation of the Administrative Procedure

13  Act (APA). State Compl. ¶¶ 7.20–7.25.

14          The Coalition moves to intervene in these related actions to defend against Plaintiffs'

15  challenge. Intervention will allow the Coalition to defend its unique and critical interests in the

16  Rule and will aid the Court in understanding the purpose of the Rule, as well as the merits and

17  implications of the Plaintiffs' claims and requested relief. The Coalition's motion is timely.  The

18  Coalition has an obvious interest in the Rule, which may be impaired if the Plaintiffs prevail.

19  And the other parties to the case cannot adequately protect the Coalitions interests.  The motion

20  should be granted.

21  **II.       STATEMENT OF INTERESTS**

22          **A.       API**

23          API is a nationwide, nonprofit trade association that represents all facets of the natural

24  gas and oil industry, which supports 10.3 million U.S. jobs and nearly 8% of the U.S. economy.

25  Rorick Decl. ¶ 3. API's 600-plus member companies include large integrated companies, as well

26  as exploration and production, refining, marketing, pipeline, and marine businesses, and service

27

28

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA  94111

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA 94111

and supply firms. *Id.* API was formed in 1919 as a standards-setting organization, and API developed more than 700 standards to enhance operational and environmental safety, efficiency, and sustainability. *Id.*

API members engage in exploration, production, and construction projects that routinely involve both State and federal water permitting that require section 401 certification. *Id.* ¶ 4. API's members have a significant interest in the Rule's provisions clarifying the timeframes for certification, the scope of certification review and conditions, and the related certification requirements and procedures. To protect these significant interests, API joined two comment letters submitted by the Natural Gas Council and the Domestic Energy Producers Alliance in response to the EPA's August 22, 2019, proposed rule.[1]

**B.     INGAA**

INGAA is a non-profit trade association representing 25 of the interstate natural gas transmission pipeline companies operating in the U.S. INGAA's members, which constitute approximately two-thirds of the interstate pipeline industry, operate a network of approximately 200,000 miles of pipelines. Dreskin Decl. ¶ 3. The interstate pipeline network serves as an indispensable link between natural gas producers and the American homes and businesses that use the fuel for heating, cooking, generating electricity, and manufacturing a wide variety of goods. *Id.* Natural gas plays a prominent role in the nation's energy mix, and interstate natural gas pipelines are an integral part of the energy infrastructure. *Id.* ¶¶ 3–4. U.S. natural gas production likely will increase to 130 billion cubic feet per day by 2035, spurred by growing markets, if available supplies are developed. Investment in new oil and gas infrastructure likely will total $791 billion from 2018 through 2035, averaging $44 billion per year. *Id.* ¶ 4. Natural

---

[1] Natural Gas Council, Comments on Updating Regulations on Water Quality Certification, Proposed Rule, 84 Fed. Reg. 44,080 (Aug. 22, 2019) (Oct. 21, 2019), EPA-HQ-OW-2019-0405-0852, https://www.regulations.gov/document?D=EPA-HQ-OW-2019-0405-0852 (Natural Gas Council Comments); Domestic Energy Producers Alliance, Comments on Updating Regulations on Water Quality Certification, Proposed Rule, 84 Fed. Reg. 44,080 (Aug. 22, 2019) (Oct. 21, 2019), EPA-HQ-OW-2019-0405-0935, https://www.regulations.gov/document?D=EPA-HQ-OW-2019-0405-0935.

gas also will serve as a backstop to help firm up variable resources, like wind and solar, which are expected to grow. *Id.* This increased demand for natural gas creates a need for thousands of miles of new and replacement pipelines to meet market demand or to modernize existing pipeline facilities. *Id.*

INGAA members routinely utilize the CWA section 401 process. First, due to the linear nature of pipelines, pipeline construction and maintenance often unavoidably involves crossing wetlands and streams, which require permitting under CWA section 404. *Id.* ¶¶ 5–6. Section 401 prohibits the Corps from issuing a section 404 permit until the authorized state or tribe provides a certification or waives certification. *Id.* ¶ 6. Second, to construct and operate an interstate pipeline, INGAA members must obtain from the Federal Energy Regulatory Commission (FERC) a certificate of "public convenience and necessity" based on demonstrated need. *See* 15 U.S.C. § 717f(c)(1)(A); Dreskin Decl. ¶ 5. Where a proposed pipeline project may result in a discharge into waters of the United States, section 401 certification or waiver is required before FERC authorizes construction resulting in the discharge. Dreskin Decl. ¶¶ 5–6.

Coalition members thus have a significant interest in the efficient operation of the section 401 certification process. Interstate natural gas pipeline construction and maintenance activities are typically conducted on tight schedules designed to ensure the safety, security, and reliability of the natural gas pipeline network, and to meet the growing demands of natural gas consumers, which makes the predictability and efficiency of the section 401 process critical. *Id.* ¶ 21. To protect these interests, INGAA joined the Natural Gas Council comment letter (a group which represents all segments of the natural gas value chain from the wellhead to the burnertip) and also filed a separate, extensive comment letter in response to the EPA's August 22, 2019, proposed rule.[2]

---

[2] Natural Gas Council Comments; INGAA, Comments on EPA's Proposal to Update Regulations on Clean Water Act Section 401 Water Quality Certification, 84 Fed. Reg. 44,080 (Aug. 22, 2019) (Oct. 21, 2019), EPA-HQ-OW-2019-0405-0918, https://www.regulations.gov/document?D=EPA-HQ-OW-2019-0405-0918.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA  94111

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA  94111

## III.   ARGUMENT

### A.   The Coalition Is Entitled to Intervene as of Right.

Federal Rule of Civil Procedure 24(a)(2) provides that, "[o]n timely motion, the court *must permit* anyone to intervene" who:

> [C]laims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2) (emphasis added); *see also United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010). In determining whether intervention is appropriate, the Ninth Circuit is "guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention." *Aerojet Gen. Corp.*, 606 F.3d at 1148 (internal quotation marks and citation omitted). The Coalition satisfies each of the requirements for intervention under Rule 24(a)(2).

### 1.   The Motion to Intervene is Timely.

The timeliness of a motion to intervene "is to be determined from all the circumstances" of the case. *NAACP v. New York*, 413 U.S. 345, 366 (1973). In making that determination, courts consider "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (internal quotation marks and citation omitted).

Here, each of these considerations shows the Coalition's motion is timely. The Coalition filed its motion as early as practicable, and before any meaningful proceedings have occurred. The Defendants have filed no responsive pleading, no party has filed a substantive motion, and the initial case management conference is still more than a month away. And significantly, the merits of the case may only be decided on the administrative record, which has not yet been submitted to the Court. Granting intervention will not cause prejudice to the other parties, and no unreasonable delay will result. *See United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th

Cir. 2002) (finding timely a motion to intervene filed "approximately one and [a] half months

after the suit was filed"); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir.

1995) (finding timely a motion "filed at a very early stage, before any hearings or rulings on

substantive matters" even though it was filed two months after the defendant filed its answer and

submitted the administrative record). Under these circumstances, the Coalition's motion is

timely.

### 2.    The Coalition Has a Direct and Recognized Interest in the Final Rule.

To intervene as of right, a movant must have "an interest relating to the property or

transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). Whether a movant has "a

significant protectable interest in the action, . . . is a 'practical, threshold inquiry,' and '[n]o

specific legal or equitable interest need be established.'" *Citizens for Balanced Use v. Mont.

Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citation omitted). The movant need only

"establish that the interest is protectable under some law and that there is a relationship between

the legally protected interest and the claims at issue." *Id.* "The relationship requirement is met 'if

the resolution of the plaintiff's claims actually will affect the [movant].'" *City of Los Angeles*,

288 F.3d at 398 (citation omitted).

The Coalition's members have a significant interest in the Rule that is protectable under

law. Section 401, by its own terms, limits the scope and duration of State reviews. The Rule

seeks to clarify and enforce these limits, which will benefit the Coalition's members, who

regularly rely on federal permits and licenses that require certification. Rorick Decl. ¶ 4; Dreskin

Decl. ¶¶ 3–6. Absent the Rule, States may continue the practice of denying or delaying action on

certification requests in violation of these limits, which clearly impairs Coalition members'

legally protectable interest in the associated federal permits and licenses. *See, e.g.*, 33 U.S.C.

§ 1344; 15 U.S.C. § 717f(c)(1)(A).

Courts regularly recognize that an interest in a federal permit satisfies the significant

protectable interest requirement. *See, e.g., Sierra Club v. EPA*, 995 F.2d 1478, 1482 (9th Cir.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA  94111

---

6

1    1993), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th

2    Cir. 2011) (en banc); *Driftless Area Land Conservancy v. Huebsch*, No. 20-1350, 2020 WL

3    4592147, at *3 (7th Cir. Aug. 11, 2020); *Ga. River Network v. U.S. Army Corps of Eng'rs*, 334

4    F. Supp. 2d 1329 (N.D. Ga. 2003) (allowing Corps permit holder to intervene in NEPA suit

5    challenging the permit); *Ohio Valley Envtl. Coal. v. U.S. Army Corps of Eng'rs*, 243 F.R.D. 253,

6    257 (S.D. W.Va. 2007) (granting intervention to Corps permit holders in litigation challenging

7    the permit).

8          Here, the Plaintiffs are not directly challenging any federal permit or license or any State

9    certification, but are challenging EPA's ground rules for the section 401 process which will

10   impact projects developed by members of the Coalition, and that interest is sufficient for

11   intervention as of right. Courts routinely find the interest requirement satisfied where the

12   litigation involves a challenge to a regulatory regime that the intervenor routinely engages. For

13   example, timber purchaser associations had a right to intervene based on their members'

14   contracts that would have been affected by litigation challenging U.S. Forest Service practices

15   for managing national forests. *Sierra Club v. Espy*, 18 F.3d 1202, 1203–04, 1207 (5th Cir. 1994).

16   Similarly, motor vehicle common carriers had a right to intervene where the litigation risked

17   setting aside a regulatory scheme that "directly protects their economic interests." *Nat'l Farm

18   Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 382 (10th Cir. 1977). And transportation

19   trade associations were granted intervention in litigation concerning federal approval of regional

20   transportation plans where the associations' members had existing contracts that would be

21   affected by the case and had contributed to the transportation plans at issue. *Utahns for Better

22   Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) (explaining that "[t]he

23   threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the

24   requisite interest" for purposes of intervention.).

25         Indeed, Courts regularly allow trade associations to intervene when the validity of a

26   regulation that affects their members' economic interests is at stake. *N.Y. Pub. Interest Research

27

28

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA 94111

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE
CASE NO.:  3:20-cv-04869-WHA

1   *Grp., Inc. v. Regents of Univ. of State of New York*, 516 F.2d 350, 352 (2d Cir. 1975) (per

2   curiam) (concluding trade associations have "a sufficient interest to permit [them] to intervene

3   since the validity of a regulation from which [their] members benefit is challenged"); *California*

4   *v. Bureau of Land Mgmt.*, No. 18-cv-00521, 2018 WL 3439453, at *8 (N.D. Cal. July 17, 2018)

5   (granting API motion to intervene in litigation challenging rescission of a regulation concerning

6   hydraulic fracturing on public and tribal lands); *Kentuckians for the Commonwealth, Inc. v.*

7   *Rivenburgh*, 204 F.R.D. 301, 306 (S.D. W.Va. 2001) (allowing intervention in CWA and

8   National Environmental Policy Act case by "an association composed of members of the

9   regulated industry").

10          Under this well-settled precedent, litigation over the Rule is likely to affect the

11   Coalition's interests. The Coalition's members regularly must satisfy section 401 to obtain

12   federal authorizations for construction and maintenance projects. Rorick Decl. ¶ 4; Dreskin Decl.

13   ¶¶ 5–6. And they have experienced significant delays and financial harm because States have

14   exceeded the statutory review period or denied certification on non-water quality grounds.

15   Rorick Decl. ¶ 11; Dreskin Decl. ¶¶ 8–9. For example, a Coalition member submitted a

16   certification request for a $683 million, 124-mile natural gas pipeline designed to connect natural

17   gas production in Pennsylvania to demand in the northeastern markets. Rorick Decl. ¶ 12;

18   Dreskin Decl. ¶ 10. The New York State Department of Environmental Conservation (NYSDEC)

19   requested additional information and deemed the request complete in December 2014. Rorick

20   Decl. ¶ 12; Dreskin Decl. ¶ 10. In April 2015, NYSDEC requested that the member withdraw

21   and resubmit its request to restart the waiver period. Rorick Decl. ¶ 12; Dreskin Decl. ¶ 10. In

22   April 2016, nearly three years after the project's initial request for certification, NYSDEC denied

23   certification. Rorick Decl. ¶ 12; Dreskin Decl. ¶ 10. The project's sponsor halted investment in

24   the pipeline and cancelled the project in February 2020. Rorick Decl. ¶ 12; Dreskin Decl. ¶ 10.

25          Coalition members have also had projects cancelled or otherwise negatively affected by

26   States' unlawful expansion of their review to include considerations unrelated to water quality.

27

28

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA  94111

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA  94111

1  For example, in August 2020, the State of North Carolina denied certification for an API

2  member's $468 million, 75-mile natural gas pipeline project on grounds that the purpose of the

3  project was "unachievable" due to the "uncertainty" of completion of a different pipeline project

4  even though FERC had already decided that public convenience and necessity required approval

5  of the project. Rorick Decl. ¶ 14. Similarly, in November 2015, the Millennium Pipeline

6  Company's request for certification for its 7.8-mile pipeline was denied, not on water quality

7  grounds but because the State determined that FERC's environmental review failed to adequately

8  assess potential downstream greenhouse gas emissions. Dreskin Decl. ¶ 11. Another example is

9  the Atlantic Coast Pipeline, a $5.1 billion pipeline project proposed by an INGAA member that

10  would transport gas produced in the Marcellus Shale region to the Mid-Atlantic region. *Id.* ¶ 13.

11  In 2017, Virginia approved water quality certification of the project subject to conditions

12  regulating activities in upland areas that may indirectly affect state waters, which reaches beyond

13  the scope of federal CWA jurisdiction and the project's direct discharges into navigable waters.

14  *Id.* Another INGAA member project was delayed as the result of the NYSDEC's decision to

15  deny certification more than one year after the member submitted its certification request. *Id.* ¶

16  12. FERC determined the State exceeded the statutory deadline and so waived certification.

17  FERC's waiver decision is on appeal to the Second Circuit. *Id.* In a separate proceeding, the

18  Second Circuit determined that the certification denial failed for a different reason—that it

19  lacked any rational connection between the facts found and choice made. *Id.*[3]

20  Given the significant ramifications for oil and gas pipeline projects from State violation

21  of section 401's statutory limits, the Coalition's members have a significant interest in the

22  procedures and substantive requirements of the Rule that correct these abuses. To protect that

23  interest, the Coalition filed detailed comments on the proposed rule, which were part of the

24  administrative record before the EPA when it adopted the Rule. Rorick Decl. ¶ 20; Dreskin Decl.

26  [3] In August 2019, NYSDEC issued a second denial of the section 401 water quality certification.
27  Dreskin Decl. ¶ 12. The pipeline appealed this decision to the Second Circuit; the court stayed
the case, pending a decision on the FERC waiver decision. *Id.*

28  9

¶ 18. The Coalition's members thus have direct interests in protecting the Rule, which creates an efficient, transparent, and effective section 401 certification process.

The litigation's potential effect on these interests is imminent, not speculative or attenuated.  A speculative economic interest that is "several degrees removed" from the issues at the heart of the litigation is insufficient to support intervention. *Alisal Water Corp.*, 370 F.3d at 920. But that is not the case here. The Coalition's interest is much more closely tied to the issues presented in this litigation, because the Coalition's members regularly must engage the section 401 certification process. The Coalition's members have numerous projects for which they will soon request certification, which will be made under the Rule. Rorick Decl. ¶ 22; Dreskin Decl. ¶ 22. If this Court declares the Rule unlawful, the Coalition's members could face years of additional delays and substantial additional costs with respect to those projects, without any commensurate benefit to the aquatic environment. Rorick Decl. ¶ 23; Dreskin Decl. ¶ 23. This connection is more than sufficient to support intervention. *Cf., e.g., Fresno Cty. v. Andrus*, 622 F.2d 436, 437 (9th Cir. 1980) (concluding that an association of small farmers had a sufficient interest for intervention in litigation to enjoin the Secretary of the Interior from promulgating regulations governing excess land sales before an environmental impact statement was prepared); *Arakaki v. Cayetano,* 324 F.3d 1078, 1088 (9th Cir. 2003) (finding a significant protectable interest by a group of Native Hawaiians in litigation concerning the State's provision of benefits).

In sum, the Coalition has a substantial protectable interest in the Rule that is the object of this litigation, because its members regularly apply for section 401 certifications and stand to experience substantial additional cost and delay if Plaintiffs obtain the relief they seek.[4]

---

[4] Although the Coalition is not required to separately demonstrate standing to participate as defendant-intervenors, *see Perry v. Schwarzenegger*, 630 F.3d 898, 906 (9th Cir. 2011) (per curiam), the Coalition's interests in the Rule, and the impairment the Coalition and its members would suffer if the plaintiffs prevail, easily satisfy any standing requirement, *see Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821 n.3 (9th Cir. 2001).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE
CASE NO.:  3:20-cv-04869-WHA

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA  94111

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA 94111

**3.    The Coalition's Interests May Be Impaired or Impeded by the Disposition of this Litigation.**

Courts in this circuit adhere to "the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 (citation omitted).  Impairment is routinely found when the movant has "a significant protectable interest"—in those circumstances, courts have "little difficulty concluding that the disposition of th[e] case *may*, as a practical matter[] affect" the movant.  *Citizens for Balanced Use*, 647 F.3d at 898 (emphasis added) (internal quotation marks and citation omitted).  A non-speculative economic interest in the outcome of the litigation is also sufficient to warrant intervention, if the interest is "concrete and related to the underlying subject matter of the action."  *Alisal Water Corp.*, 370 F.3d at 919; *see also United States v. Albert Inv. Co.*, 585 F.3d 1386, 1393 (10th Cir. 2009) ("threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest" to warrant intervention) (internal quotation marks and citation omitted).

Here, it is readily apparent that, if the Rule is found unlawful, the Coalition's members' interests could be substantially impaired or impeded. If Plaintiffs obtain a judgment declaring the Rule unlawful, Coalition members would not realize the benefits of the Rule and could face years of additional delays and substantial additional costs, without any commensurate benefit to the aquatic environment. Rorick Decl. ¶ 23; Dreskin Decl. ¶ 23. States would be able to continue to condition or deny certification for Coalition members' projects based on policy objections unrelated to water quality. Rorick Decl. ¶ 23; Dreskin Decl. ¶ 23. Accordingly, many important activities associated with oil pipelines, natural gas pipelines, and natural gas liquids pipelines may be delayed or otherwise encumbered if the Rule is declared unlawful and States and return to their previous practices of improperly denying or delaying certification.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA  94111

### 4.    The Current Parties Do Not Adequately Represent the Coalition's Interests.

A proposed intervenor's burden of showing inadequacy of representation is a "'minimal'" one. *Citizens for Balanced Use*, 647 F.3d at 898 (citation omitted). As the Supreme Court has explained, "the applicant [need only] show[] that representation of [its] interest[s] [by existing parties] *'may be'* inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (emphasis added); *see also Sw. Ctr. for Biological Diversity*, 268 F.3d at 823. Adequacy of representation is determined by "examin[ing] three factors: '(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.'" *Citizens for Balanced Use*, 647 F.3d at 898 (citation omitted).

Courts in this Circuit and elsewhere routinely recognize that private parties and the federal government do not necessarily share the same interests even when they both support a given government action. As the Ninth Circuit has explained, "the government's representation of the public interest may not be identical to the individual parochial interest of a particular group" notwithstanding that "both entities occupy the same posture in the litigation." *Id.* at 899 (internal quotation marks and citations omitted). For that reason, the Ninth Circuit found that a union's employment interests were not adequately represented by the State of California because they are "potentially more narrow and parochial than the interests of the public at large." *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998). Courts across the country have taken the same view. *See, e.g.*, *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1025-26 (8th Cir. 2003) (in suit challenging Corps policy to lower reservoir water level, Corps could not adequately represent interests of proposed intervenors— downstream users—because Corps was required to balance the interests of the upstream and downstream users); *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002) ("[A] federal defendant with a primary interest in the management of a resource" does not have

12

an "interest[] identical to those of an entity with an economic interest[] in the use of that resource.") (citation omitted); *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44-45 (1st Cir. 1992) ("[A] governmental entity charged by law with representing the public interest of its citizens might shirk its duty were it to advance the narrower interest of a private entity . . . .").

EPA's institutional considerations make it ill-suited to adequately represent the Coalition's interests. Although EPA has an interest in providing regulatory clarity to industry, as well as States and tribes, it has to balance that interest against its myriad other interests including environmental protection, its institutional reputation, and its own authority as the regulator tasked with implementing the CWA and as a permitting authority in certain situations. These considerations mean that the Coalition and EPA have different interests, particularly when it comes to matters of EPA's authority, which the Rule undoubtedly implicates. Further, EPA has no particular interest in defending the Coalition members' financial interests in their federal permit and license applications.

The interests of Coalition members and EPA also diverge due to their different roles in the section 401 certification process. Section 401 provides that "[a]ny applicant for a Federal license or permit to conduct any activity . . . which may result in any discharge into the navigable waters, shall provide the licensing or permitting agency a certification from the State in which the discharge originates." 33 U.S.C. § 1341(a)(1). And "[n]o license or permit shall be granted until the certification required by this section has been obtained or has been waived." *Id.* Applicants, including Coalition members, thus have a concrete interest in ensuring that States and tribes exercise their certification authority expeditiously so that the appropriate federal agency can grant their permit or license application. EPA's role is markedly different. In some cases (e.g., where a tribe lacks authority to give certification) EPA itself is the certifying authority. *Id.* And when a discharge in one State may affect the water quality of another State, section 401 requires EPA to give to the permitting or licensing authority, its opinion on

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE
CASE NO.:  3:20-cv-04869-WHA

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA  94111

certification. *Id.* § 1341(a)(2). So EPA's section 401 duties can put it in direct opposition to Coalition member's interests. That statutory role will almost certainly affect the way in which EPA defends the Rule, which provides the rules of the road for certifications both when made by EPA and when made by States or tribes. EPA cannot be expected to fully defend the Coalition's financial interests in permit and license approval under such conditions.

The number of issues involved in the Rule further indicates that the Coalition and the Federal Defendants will present different arguments and place different emphasis on different aspects of the Rule. The Rule addresses a number of certification issues, including the permissible scope of section 401 review, the timeframe for certification, when certification is required, and pre-filing meeting requests, to name a few. This is not a rule that defines a single statutory term where there are a relatively narrow set of issues, and thus, a narrow set of arguments that will likely be made in defense of the Rule. *See* Order Denying Mots. to Intervene, *California v. Wheeler*, No. 3:20-cv-03005 (N.D. Cal. Aug. 13, 2020) (Dkt. 200) (denying intervention because there was no indication that proposed intervenors' interests would be inadequately represented and a preliminary injunction had already been granted). Instead, the Coalition and the Federal Defendants will present different arguments not only on the substance of some of these issues but will also approach differently questions about the relative importance of the various aspects of the Rule.

In particular, the government may devote more time and energy to advocating broad legal principles at the expense of other arguments in defense of the Rule that are more important in the Coalition's view. For example, this case presents questions about the extent to which a federal agency may interpret ambiguous statutes under *Chevron, U.S.A. Inc., v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). In the Rule, EPA correctly concludes that the Supreme Court's majority opinion in *PUD No. 1 of Jefferson County v. Washington Department of Ecology*, 511 U.S. 700 (1994), does not deprive EPA of its authority to interpret ambiguous terms in the statute regarding the scope of authority provided in subsections 401(a) and 401(d).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE
CASE NO.:  3:20-cv-04869-WHA

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA  94111

*See* 85 Fed. Reg. at 42,224–25, 42,229 (citing *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Serv.*, 545 U.S. 967 (2005)). The Coalition agrees that given the unique aspects of the Supreme Court's *PUD No. 1* decision, *see* 85 Fed. Reg. at 42,233–34, it does not preclude EPA's interpretation of section 401. The government's defense of the Rule, however, may rely on and advocate for a broader application of the principles espoused in *Brand X*, which could conflict with the Coalition's position.

The Coalition also will make arguments that are uniquely within its area of expertise given its members' substantial experience applying for section 401 certifications. The proposed intervenor's expertise in a particular area that is not shared by the federal government defendant is a factor courts consider in granting intervention. *See Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 528 (9th Cir. 1983) (granting intervention in litigation over the Secretary of the Interior's decision to recommend establishment of a national conservation area where the non-profit wildlife protection association had specific "expertise apart from that of the Secretary [of the Interior]"). Here, the Coalition will be able to enhance the Court's understanding of the section 401 certification process from the perspective of permit applicants. Rorick Decl. ¶ 25; Dreskin Decl. ¶ 25. The Coalition will be able to explain the importance of an efficient certification process and how businesses, consumers, and employees are affected when States exercise their certification authority improperly by, for example, failing to comply with the statutory timeframe or blocking infrastructure projects for reasons outside the scope of section 401. Rorick Decl. ¶ 25; Dreskin Decl. ¶ 25. The Federal Defendants do not have the experience or expertise to fully develop these arguments.

Further supporting intervention is the real risk that the Coalition and the Federal Defendants' interests will diverge even further during the course of litigation due to a change in administration or policy. A number of recent examples show that this is a real possibility. In 2018, the federal government abandoned its defense of the 2015 waters of the United States (WOTUS) Rule in litigation in the Southern District of Georgia and the Southern District of

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA  94111

1   Texas when the new Administration initiated a rulemaking to revise the rule. *See* Fed. Defs.'

2   Resp. to States' & to Private Party Pls.' Mots. for Summ. J., *Texas v. EPA*, No. 3:15-cv-00162

3   (S.D. Tex. Nov. 8, 2018) (Dkt. 170); United States' Resp. to Pls.' & Intervenor Pls.' Mots. for

4   Summ. J., *Georgia v. Wheeler*, No. 2:15-cv-00079-LGW-BWC (S.D. Ga. Oct. 10, 2018) (Dkt.

5   215). Similarly, courts have noted when granting intervention that an agency "may decide that

6   the matter lacks sufficient general importance to justify" an appeal. *Sierra Club, Inc. v. EPA*, 358

7   F.3d 516, 518 (7th Cir. 2004). Here, the upcoming presidential election presents the real

8   possibility that the interests of a new administration will cause a change in the way the present

9   case is litigated that departs significantly from the Coalition's interests. This possibility only

10  further confirms that the Federal Defendants will not adequately represent the Coalition's

11  substantial interest in the litigation.

**B.   Alternatively, the Coalition Should Be Granted Permissive Intervention.**

12       Although the Coalition is entitled to intervene as of right under Rule 24(a)(2), in the

13  alternative, the Court should permit the Coalition to intervene under Federal Rule of Civil

14  Procedure 24(b)(1)(B). Under Rule 24(b)(1)(B), the Court may exercise its discretion to permit

15  intervention by anyone who "has a claim or defense that shares with the main action a common

16  question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see also Perry*, 630 F.3d at 905.  This

17  Court has broad discretion to grant permissive intervention. *See Kootenai Tribe of Idaho v.*

18  *Veneman*, 313 F.3d 1094, 1110 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y*

19  *v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc).

20       In deciding whether to allow intervention under Rule 24(b)(1)(B), the Court may

21  consider any number of factors, *see Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326,

22  1329 (9th Cir. 1977), but intervention should generally be permitted when the movant (1) asserts

23  an interest related to the issue in dispute, and (2) raises defenses that respond directly to the

24  plaintiff's claim for relief. *See, e.g., Kootenai Tribe*, 313 F.3d at 1110. "The fact that the

25  applicants may be helpful in fully developing the case is a reasonable consideration in deciding

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA  94111

16

on permissive intervention." *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999).

Permissive intervention is warranted here. Plaintiffs challenge the Rule and, if successful, the Coalition's interests would be substantially affected. The defense the Coalition would assert would be based on the administrative record to be filed by Federal Defendants, present questions of law and fact in common with the underlying suit, and respond directly to Plaintiffs' claims. The Coalition represents the unique perspective of applicants for section 401 certifications that are required for federal CWA permits and other licenses. That interest is not shared by any other party in the suit. The Coalition's participation would thus aid the Court's understanding of the section 401 certification process, the problems that the Rule solves, and the potential impact on permit applicants if the Rule is declared unlawful. The Coalition is uniquely positioned to assist the Court in understanding the merits and implications of Plaintiffs' claims, and thereby assist in the equitable resolution of these related actions.

Finally, granting intervention will not delay the litigation. The Coalition's motion is timely and, if granted intervention, the Coalition expects to participate on the same schedule established for the existing parties.

## C. The Coalition Should Be Allowed To File Its Answer After The Federal Defendants.

A motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Rule 24(c) may be satisfied by a motion to intervene, even without an accompanying pleading, when the motion provides sufficient information to apprise the court of the grounds for the motion. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992) (when "the movant describes the basis for intervention with sufficient specificity to allow the district court to rule, its failure to submit a pleading is not grounds for reversal."); *see also United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009) ("we conclude that the statement

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA  94111

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE
CASE NO.:  3:20-cv-04869-WHA

of interest satisfies Rule 24(c) because it provides sufficient notice to the court and the parties of [movant's] interests."); *Spring Constr. Co. v. Harris*, 614 F.2d 374, 376–77 (4th Cir. 1980). In fact, the Ninth Circuit has permitted intervention even where the intervenor did not file an answer, adopt any pleading filed by another party, or seek leave to file an answer until months after a motion to strike the defendant's answer. *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009).

Short of waiving the pleading requirement entirely, courts have also recognized that a pleading may be filed at a later time after the motion to intervene has been filed. *See Marshall v. Meadows*, 921 F. Supp. 1490, 1492 (E.D. Va. 1996) (allowing proposed intervenor to file an answer three weeks and one day after the motion to intervene "where even the named defendants are not yet required to answer"); *WJA Realty Ltd. P'ship v. Nelson*, 708 F. Supp. 1268, 1272 (S.D. Fla. 1989) (explaining that "[f]ailure to file an accompanying pleading . . . may be rectified by the later filing of such a pleading."); *see also Parker v. Morton*, No. 18-00234-KD-B, 2019 WL 1645207, at *5 (S.D. Ala. Apr. 16, 2019); *United States v. City of Hialeah*, 899 F. Supp. 603, 608 n.5 (S.D. Fla. 1994), *aff'd*, 140 F.3d 968 (11th Cir. 1998); *Gibraltar Mausoleum Corp. v. Cedar Park Cemetery Ass'n*, No. 92 C 5228, 1993 WL 135454, at *4 (N.D. Ill. Apr. 29, 1993).

The circumstances warrant allowing the Coalition to file its pleading within a reasonable time after the Federal Defendants file their pleading for at least two reasons. First, judicial economy and efficiency support this approach. The Coalition is filing the present motion to intervene at this early stage of the proceedings because, as demonstrated in this memorandum, the Coalition has a substantial interest affected by the Rule and that such interest will not be adequately represented by the existing parties. As it has done in filing this motion, the Coalition intends to participate in this litigation as efficiently and expeditiously as possible. Although the Coalition does not intend to stand on the Federal Defendants' pleading, allowing it to file after the Federal Defendants will allow the Coalition to minimize duplication as much as possible while still protecting its interests.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, CA  94111

Second, principles of fairness counsel in favor of allowing the Coalition to file its pleading after the Federal Defendants. The Coalition has proceeded as expeditiously as possible in filing this motion and should not be placed in a worse position than any other intervenor because it has filed expeditiously. Further, allowing the Coalition to file its answer after the Federal Defendants will not impair this Court's ability to decide this motion because the Coalition has provided ample support for intervention, which is sufficient standing alone for the court to grant intervention. *See Westchester Fire Ins. Co.*, 585 F.3d at 1188 ("'Courts, including this one, have approved intervention motions without a pleading where the court was otherwise apprised of the grounds of the motion.'" (quoting *Beckman Indus.*, 966 F.2d at 474)). It also will not prejudice any other party since the Plaintiffs will not receive the Federal Defendants' pleading until September 21, 2020. *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 297 F. Supp. 3d 261, 265 (D.P.R. 2017) (recognizing "discretion to allow a motion to intervene filed without an accompanying pleading where its absence is not prejudicial to a party.").

## IV.    CONCLUSION

The Coalition respectfully requests that this Court grant its Motion to Intervene as of Right under Federal Rule of Civil Procedure 24(a)(2). In the alternative, the Coalition respectfully requests that this Court grant permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B).

DATED:  September 4, 2020                          **HUNTON ANDREWS KURTH LLP**

By:    /s/ *Clare Ellis*
       Clare Ellis
       George P. Sibley, III
       Deidre Duncan

*Counsel for Proposed Intervenor-Defendants American Petroleum Institute and Interstate Natural Gas Association of America*

19